IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT ALEXANDER and JAMES LEE REED, individually and on behalf of all others similarly situated | : : : : | CIVIL ACTION NO. 07-4426 |
| v. | : : | |
| WASHINGTON MUTUAL, INC.; WASHINGTON MUTUAL BANK; WASHINGTON MUTUAL BANK fsb; and WM MORTGAGE REINSURANCE COMPANY | : : : : : | |

O'NEILL, J.                                                                                          JUNE 30, 2008

MEMORANDUM

On October 22, 2007 plaintiffs Robert Alexander and James Lee Reed filed a class action complaint alleging that defendants Washington Mutual, Inc.; Washington Mutual Bank; Washington Mutual Bank fsb; and WM Mortgage Reinsurance Company violated the Real Estate Settlement Procedures Act by collecting illegal referral or kickback payments in the form of reinsurance premiums.

Before me now are defendants' motion to dismiss plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), plaintiffs' response and defendants' reply.

BACKGROUND

Defendant Washington Mutual, Inc. is a Washington corporation with its corporate headquarters in Seattle, Washington. Washington Mutual, Inc., which does business in all 50 states, is the parent company of defendants Washington Mutual Bank, Washington Mutual Bank fsb, and WM Mortgage Reinsurance Company. Defendants Washington Mutual Bank and

1

Washington Mutual Bank fsb are federally-chartered savings associations headquartered in Seattle, Washington. Defendant WM Mortgage Reinsurance, a Hawaii corporation headquartered in Seattle, Washington, reinsures loans originated by Washington Mutual, Inc.

Plaintiffs Robert Alexander and James Lee Reed, residents of Westminster, Maryland and Dover, Pennsylvania, respectively, both obtained residential mortgage loans from Washington Mutual: Alexander in December of 2005, and Reed in April of 2007. Plaintiffs secured their loans with down payments of less than 20% and were required to pay for private mortgage insurance[1] from an insurer with whom Washington Mutual had a captive reinsurance arrangement.[2] Specifically plaintiffs allege that Washington Mutual directed them and its other clients to private mortgage insurance providers who have agreed to reinsure the clients' mortgage

---

[1]According to plaintiffs' class action complaint, home buyers who are incapable of placing a full 20% down payment to secure a loan are required by banks to obtain private mortgage insurance (PMI), which helps to insulate the bank in the event of a default by the borrower. The mortgage provider generally instructs the borrower to use a particular PMI provider. If a default occurs, the PMI will pay a percentage of the value of the loan to the bank, enabling the bank to recoup its losses. Typically a PMI provider also will secure insurance to guarantee that it will be protected in the event of a default by borrowers. The insurance that an insurer obtains is known as reinsurance.

Generally there are two types of reinsurance: quota share and excess loss. In a quota share arrangement, the reinsurer pays a fixed percentage of all losses of the client insurance agency. In an excess loss arrangement, the reinsurer pays claims over a particular ceiling. With the excess loss arrangement, there is no guarantee of a particular loss being shifted to the reinsurer. An easy analogy would be to compare an excess loss arrangement to an insurance deductible. Under a given amount, the reinsurer has no liability, and above said amount they are liable for at least a portion of the loss.

[2]According to plaintiffs' complaint, in order to capitalize on the lucrative home insurance market some lenders have created captive reinsurance corporations. A captive reinsurance corporation is a company owned by the lending agency which issues reinsurance to PMI providers. To ensure a revenue stream, lenders will often direct their clients to a PMI provider who has agreed to reinsure the clients' mortgage insurance with the lender's captive reinsurer.

insurance with WM Mortgage Reinsurance.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss all or part of an action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In ruling on a 12(b)(6) motion, I must accept as true all well-pleaded allegations of fact, and any reasonable inferences that may be drawn therefrom, in plaintiff's complaint and must determine whether "under any reasonable reading of the pleadings, the plaintiff[] may be entitled to relief." Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) (citations omitted). Typically, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations" though plaintiffs' obligation to state the grounds of entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)." Id. (citations omitted). A well-pleaded complaint may proceed even if it appears "that recovery is very remote and unlikely." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). When considering a Rule 12(b)(6) motion, I do not "inquire whether the plaintiff[] will ultimately prevail, only whether [he is] entitled to offer evidence to support [his] claims." Nami, 82 F.3d at 65, citing Scheuer, 416 U.S. at 236.

## DISCUSSION

Congress passed the Real Estate Settlement Procedures Act to protect home buyers "from unnecessarily high settlement charges caused by certain abusive practices," provide home buyers with more effective advanced notice of settlement fees and eliminate "kickbacks or

referral fees that tend to increase unnecessarily the costs of certain settlement services." 12 U.S.C. § 2601(a) & (b)(1)-(2).  RESPA prohibits payments or kickbacks from business referrals and forbids fee splitting or payments for services not actually rendered.  12 U.S.C. § 2607(a)-(b);[3] see Boulware v. Crossland Mortgage Corp., 291 F.3d 261, 266 (4th Cir. 2002).  "While RESPA does not relate predominantly to insurance, it does explicitly refer to mortgage insurance."  Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1298 (11th Cir. 2002), citing 12 U.S.C. § 2602(3).[4]

---

[3]Section 2607 provides in relevant part:

(a) Business referrals

No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person.

(b) Splitting charges

No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed.

12 U.S.C. § 2607.

[4]Section 2602(3) defines the term "settlement services" as used in RESPA as:

[A]ny service provided in connection with a real estate settlement including, but not limited to, the following: title searches, title examinations, the provision of title certificates, title insurance, services rendered by an attorney, the preparation of documents, property surveys, the rendering of credit reports or appraisals, pest and fungus inspections, services rendered by a real estate agent or broker, the origination of a federally related mortgage loan (including, but not limited to, the taking of loan applications, loan processing, and the underwriting and funding of loans), and the handling of the processing, and closing or settlement . . . .

In its motion defendant argues: (1) plaintiff's claim is barred by the filed rate doctrine; (2) plaintiff's claim is barred by RESPA's safe harbor provision; (3) plaintiff has no Article III standing; and (4) the Court should abstain from jurisdiction. I will address each argument in turn.

I.     Filed Rate Doctrine

The filed rate doctrine states that where regulated companies are required by federal or state law to file proposed rates or charges with a governing regulatory agency any rate approved by that agency "is per se reasonable and unassailable in judicial proceedings brought by ratepayers." Wegoland Ltd. v. NYNEX Corp., 27 F.3d 17, 18 (2d Cir. 1994). The filed rate doctrine has no fraud exception; rates that are approved are per se reasonable even if obtained by fraud. Id. at 20 ("[E]very court that has considered [the issue] has rejected the notion that there is a fraud exception to the filed rate doctrine.") (citing cases).

Pennsylvania law requires that all rates for policies of property insurance be filed with the Department of Insurance, 40 Pa. Stat. § 710-5(a), in part to establish rates that are "not excessive, inadequate or unfairly discriminatory." 40 Pa. Stat. § 710-5(c)(2)(i). Defendants argue that plaintiff's RESPA claim is barred by the filed rate doctrine because pursuant to the aforementioned statutes mortgage insurance rates are regulated by the Pennsylvania Department of Insurance and therefore they are per se reasonable and unassailable in a judicial proceeding.

I conclude that the filed rate doctrine does not bar the plaintiffs' claim that defendants violated RESPA through an alleged kickback or fee-splitting scheme through their mortgage lender's captive reinsurance arrangement. While the filed rate doctrine bars direct challenges to

---

12 U.S.C. § 2602(3).

the insurance rate structure set by a state, see Morales v. Attorneys' Title Ins. Fund, Inc., 983 F. Supp. 1418, 1429 (S.D. Fla. 1997) (granting Rule 12(b)(6) motion to dismiss RESPA claim pursuant to the filed rate doctrine because the object of plaintiffs' kickback claim was nothing more than to challenge directly the title insurance rates that had been set by the State of Florida), courts have held that it does not prohibit plaintiffs from bringing suit under RESPA for a violation of fair business practices through the use of illegal kickback payments, see, e.g., Kay v. Wells Fargo & Co., 247 F.R.D. 572, 576 (N.D. Cal. 2007); Kahrer v. Ameriquest Mort. Co., 418 F. Supp. 2d 748, 755-56 (W.D. Pa. 2006); see also Boulware, 291 F.3d at 266.  But see Stevens v. Union Planters Corp., 2000 WL 33128256, at *3 (E.D. Pa. Aug. 22, 2000) (holding that an allegation of kickbacks in a forced hazard insurance scheme was barred by the filed rate doctrine).  As the United States District Court for the Northern District of California summarized in Kay:

> Statutes like RESPA are enacted to protect consumers from unfair business practices by giving consumers a private right of action against service providers. Plaintiffs may not sue under the veil of RESPA if they simply think that the price they paid for their settlement services was unfair.  Alternatively, plaintiffs bringing a suit under RESPA may allege a violation of fair business practices through the use of illegal kickback payments.  The filed-rate doctrine bars suit from the former class of plaintiffs and not the latter.

247 F.R.D. at 576.  In Kay the Court held that the plaintiffs' RESPA claim was not barred by the filed rate doctrine where plaintiffs alleged that their mortgage lender's captive reinsurance arrangement was actually a kickback scheme in violation of RESPA because little to no risk was actually transferred.  Id. at 574-76.

In their present motion defendants rely on Morales to argue that plaintiffs' RESPA claim is barred.  Defendants correctly note that the Morales plaintiffs claimed that the title insurers

violated RESPA by providing kickbacks and contended that the alleged kickbacks injured them by inflating the rates that paid for title insurance. 983 F. Supp. at 1422, 1429. However, the Morales Court determined that, though they alleged the title insurance rate structure provided for the payment of kickbacks, the plaintiffs were doing nothing more than protesting the title insurance rate structure set by the State of Florida. Id. at 1429 ("[D]espite their protestations, the plaintiffs' claims are nothing more than a challenge to Florida's rate structure."). The Court recognized that "the plaintiffs are challenging, under RESPA, the defendants' alleged practice of 'always or nearly always' adhering to a 70/30 split of title insurance premiums with their agents, even though such a percentage split is explicitly allowed by Florida law." Id. at 1424.

In this case plaintiffs allege more than protestations that due to defendant's adherence with the Pennsylvania's applicable laws and regulations the price they paid for their settlement services was unfair. Plaintiffs do not challenge directly the reasonableness or fairness of any rate set by the Commonwealth of Pennsylvania. Rather, plaintiffs claim that defendants' captive reinsurance arrangement constitutes an alleged kickback or fee-splitting scheme in violation of RESPA. Plaintiffs support their claim that the reinsurance premiums constitute kickbacks by alleging they were payments for services not actually performed. In support of this allegation plaintiff alleges that from 2000 to 2005 WM Mortgage Reinsurance received over $295 million in reinsurance premiums yet has never paid for a single loss.

The filed rate doctrine does not bar the plaintiffs' claim in this case.

II.     RESPA's Safe Harbor Provision

RESPA contains a safe harbor provision which states that nothing shall prohibit "the payment to any person of a bona fide salary or compensation or other payment for goods or

facilities actually furnished or for services actually performed." 12 U.S.C. § 2607(c)(2). The Department of Housing and Urban Development's two-prong test for determining if a payment qualifies for RESPA's safe harbor provision requires that the Court evaluate: (1) "whether goods or facilities were actually furnished or services were actually performed for the compensation paid" and (2) "whether the payments are reasonably related to the value of the goods or facilities that were actually furnished or services that were actually performed." RESPA Statement of Policy 2001-1: Clarification of Statement of Policy 1999-1 Regarding Lender Payments to Mortgage Brokers, and Guidance Concerning Unearned Fees, 66 Fed. Reg. 53,052, 53,054 (Oct. 18, 2001); RESPA Statement of Policy 1999-1 Regarding Lender Payments to Mortgage Brokers, 64 Fed. Reg. 10,080, 10,084 (Mar. 1, 1999); see Smith v. Litton Loan Servicing, LP, 2005 WL 289927, at *11-12 (E.D. Pa. Feb. 4, 2005).

In this case plaintiffs have sufficiently alleged that the payments in question are not covered by RESPA's safe harbor provision. As stated above, plaintiffs allege that the reinsurance premiums at issue constitute kickbacks because they were payments for services not actually performed and in support allege that from 2000 to 2005 WM Mortgage Reinsurance received over $295 million in reinsurance premiums yet has never paid for a single loss. Due to these allegations, whether goods or facilities were actually furnished or services were actually performed for the compensation paid and whether the payments are reasonably related to the value of the goods or facilities that were actually furnished or services that were actually performed remain open questions at this stage of the litigation. I therefore refuse to dismiss plaintiffs' complaint pursuant to RESPA's safe harbor provision.

III.     Article III Standing

The Supreme Court has articulated the minimum standard for what is constitutionally necessary to establish Article III standing:

> First, the plaintiff must have suffered an "injury in fact"-an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.' Second, there must be a causal connection between the injury and the conduct complained of-the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (citations omitted).

In the present motion defendants contend that plaintiffs' claims should be dismissed because: (1) plaintiffs have not stated a cognizable injury that establishes Article III standing; and (2) plaintiffs do not allege an overcharge sufficient to establish Article III standing. More specifically, defendants first argue that plaintiff cannot demonstrate cognizable injury where plaintiffs fail to allege that they paid anything other than the filed rates approved by the Pennsylvania Department of Insurance. Because filed rates are reasonable per se defendants contend that by paying the filed rate plaintiffs have not suffered any actual or threatened injury sufficient to confer jurisdiction on the Court. Defendants next argue that a private RESPA plaintiff must allege a settlement service overcharge to establish standing and that the present plaintiffs cannot plausibly allege an overcharge when they paid rates that were reasonable per se.

"The damages provision of Section 2607(d)(2) is the focal point of the standing analysis." Carter v. Welles-Bowen Realty, Inc., 493 F. Supp. 2d 921, 924 (N.D. Ohio 2007). Section 2607(d)(2) provides:

9

> Any person or persons who violate the prohibitions or limitations of this section shall be jointly and severally liable to the person or persons charged for the settlement service involved in the violation in an amount equal to three times the amount of any charge paid for such settlement service.

12 U.S.C. § 2607(d)(2).

In <u>Yates v. All American Abstract Co.</u> this Court recognized a split in authority among courts interpreting § 2607(d)(2):

> <u>Morales</u> is representative of a line of cases limiting a plaintiff's trebled damages under RESPA to the amount the plaintiff allegedly paid as a kickback or fee split prohibited by RESPA. 983 F. Supp. at 1427-29. <u>Kahrer</u>, on the other hand, looks primarily at the plain language of the statute and its complete legislative history to conclude that a plaintiff who is entitled to damages under § 8(d)(2) can seek to treble the full amount she paid in settlement services to the defendants. 418 F. Supp. 2d at 751-56, <u>see also</u> <u>Robinson v. Fountainhead Title Group Corp.</u>, 447 F. Supp. 2d 478 (D. Md. 2006).

487 F. Supp. 2d 579, 582 (E.D. Pa. 2007).

In <u>Morales</u> the Court held that because plaintiffs "have no legal right to pay anything other than the promulgated rates, they have suffered no cognizable injury by virtue of paying said rates." 983 F. Supp. at 1429. Courts following the reasoning in <u>Morales</u> accordingly have held that "absent an overcharge that is contestable by the plaintiff, a plaintiff does not have standing to sue under RESPA." <u>Mullinax v. Radian Guar., Inc.</u>, 311 F. Supp. 2d 474, 483 (M.D.N.C. 2004); <u>see also</u> <u>Moore v. Radian Group, Inc.</u>, F. Supp. 2d 819, 826 (E.D. Tex. 2002) (holding that Congress did not intend to "allow a private plaintiff to sue for an alleged violation of RESPA's anti-kickback provision when the plaintiff has not alleged that the referral arrangement increased any of the settlement charges at issue or that any portion of the charge for the settlement service was involved in the kickback violation").

In Kahrer the Court, looking to the plain language of RESPA and its complete statutory history, determined that Morales was wrongly decided. Kahrer, 418 F. Supp. 2d at 756. Based on its interpretation of § 2607(d)(2), focusing on the 1983 amendment to RESPA, the Court held that a plaintiff's failure to allege that she was overcharged for settlement services does not preclude a finding that she suffered an injury in fact or that she had standing to bring an § 8(a) claim. Kahrer, 418 F. Supp. 2d at 756; see also Boulware, 291 F.3d at 266 ("Section 8(a) prohibits the payment of formal kickbacks or fees for the referral of business and does not require an overcharge to a consumer."); Robinson v. Fountainhead Title Group Corp., 447 F. Supp. 2d 478, 489 (D. Md. 2006) ("[I]njury in a RESPA case can be shown by harm other than allegations of overcharges. . . . the alleged § 8(a) violation presents the possibility for other harm, including a lack of impartiality in the referral and a reduction of competition between settlement service providers."). The Court concluded that "RESPA gives consumers the right, enforceable by a private right of action for statutory damages, to purchase settlement services from companies that have not participated in a kickback scheme."[5] Kahrer, 418 F. Supp. 2d at 756. According to the Kahrer line of cases, under § 2607(d)(2) "the proper measure of damages under RESPA is three

---

[5]The Court stated:

> The statute was amended in 1983, however, at which time the language entitling one to recover three times the "thing of value" was replaced by the language at issue here which provides for liability for violating the statute in an amount equal to three times the amount of "any charge paid for such settlement services." Had Congress intended for liability to be limited to three times the overpayment or the "thing of value" as it had been since 1974 it would have had no need to amend the statute as it did. In short, it is simply nonsensical to suggest that Congress still intended to provide for damages in an amount three times the proscribed payment when it eliminated that very language from the statute.

Kahrer, 418 F. Supp. 2d at 755.

times the entire amount paid for the settlement services involved in the alleged kickback scheme, not three times the difference between what was actually paid and what should have been paid." Id. (citation and internal quotation marks omitted).

Considering the conflict in the case law and the cases cited by both parties, I find the reasoning of Kahrer to be more persuasive than that of Morales and accordingly conclude that under the plain language of the statute and its legislative history a plaintiff who is entitled to damages under § 8(d)(2) can seek three times the full amount he paid for any settlement services.[6] Under the Kahrer line of cases, with which I agree, RESPA provides that plaintiffs have a right to purchase settlements services from providers who do not participate in an illegal kickback scheme. Therefore, plaintiffs' failure to allege an overcharge for settlement services does not preclude a finding of injury in fact for the purposes of Article III standing.

IV.     Burford Abstention Doctrine

In Burford v. Sun Oil Co. the Supreme Court concluded that where complex issues of state administrative law are presented a federal court may in its discretion "stay its hand" and abstain from hearing the case. 319 U.S. 315, 334 (1943). The Court of Appeals has explained:

---

[6]Defendants urge that the Northern District of Ohio's decision in Carter, which expressly rejected the reasoning of Kahrer and agreed with Morales and Moore, is better reasoned than Kahrer and more consistent with RESPA's history and purpose. See Carter, 493 F Supp. 2d at 927. However, I, like the Court in Kahrer, conclude that the reading proposed by Carter and Morales is in conflict with the plain meaning of RESPA: "[T]he literal language of § 2607(d)(2) provides for three times the amount of *any charge* paid for the settlement services which would appear to encompass all of the charges associated with the services provided rather than only treble the amount of any overpayment. . . . Moreover, the language relied upon by the Court in Morales – that recovery may be had by the person charged for the settlement services involved in the violation – does not, in our view, suggest that only the overpayment is to be trebled." Kahrer, 418 F. Supp. 2d at 753 (emphasis in original) (citations and internal quotation marks omitted).

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case at bar;" or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

Riley v. Simmons, 45 F.3d 764, 771 (3d Cir. 1995), quoting New Orleans Pub. Serv., Inc. v. Council of New Orleans, 491 U.S. 350 (1989). "While Burford is concerned with protecting complex state administrative processes from undue federal interferences, it does not require abstention whenever there is such a process." New Orleans Pub. Serv., Inc., 491 U.S. at 362.

I conclude that Burford abstention does not apply to this case, where plaintiffs are claiming that defendants through their captive reinsurance program violated the anti-kickback provision of RESPA. With respect to the first prong of the doctrine – whether timely and adequate state-court review is available – defendants argue that plaintiffs should pursue their administrative remedies, pointing to Pennsylvania's extensive administrative procedures for pursuing claims under its Insurance Code. See 40 Pa. Stat. Ann. §§ 1171.8-1171.13 (providing that such claims are to be pursued under the Pennsylvania Administrative Procedure Act). However, as discussed above, RESPA provides plaintiffs with a private cause of action in this case, and plaintiffs brought their action under RESPA's anti-kickback provision appropriately in federal court. As plaintiffs presently neither pursue a claim under Pennsylvania's Insurance Code nor challenge an administrative decision of Pennsylvania, plaintiffs' remedies are not limited to state administrative or court proceedings, and the mere existence in Pennsylvania of

13

administrative procedures for insurance claims does not require abstention. Additionally, there are no prior or ongoing state proceedings with which the present action interferes.

Further, the second prong of the <u>Burford</u> doctrine – whether there are difficult questions of state law impacting public policy or exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy – is not implicated in this case. Defendants correctly note that Pennsylvania has enacted comprehensive insurance regulations and that state administrative regimes have special competence to establish policies concerning insurance rate premiums. Yet plaintiffs do not challenge the filed rate or any other state policies in this matter. Plaintiffs allege that defendants' alleged kickback scheme – not defendants' charged rate – violates RESPA, a federal statute. Therefore adjudication of this matter will not interfere with Pennsylvania's efforts to maintain a comprehensive and coherent regulatory regime. I will not abstain from hearing this case under the principles set forth in <u>Burford</u>.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT ALEXANDER and JAMES LEE REED, individually and on behalf of all others similarly situated | : : : : | CIVIL ACTION NO. 07-4426 |
| v. | : : | |
| WASHINGTON MUTUAL, INC.; WASHINGTON MUTUAL BANK; WASHINGTON MUTUAL BANK fsb; and WM MORTGAGE REINSURANCE COMPANY | : : : : : | |

**ORDER**

AND NOW, this 30th day of June 2008, upon consideration of defendants' motion to dismiss plaintiffs' class action complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), plaintiffs' response and defendants' reply, it is ORDERED that defendants' motion to dismiss is DENIED.

The parties shall agree upon and submit a briefing schedule regarding the issue of class certification within ten (10) business days from date.

                                                   s/Thomas N. O'Neill, Jr.
                                                   THOMAS N. O'NEILL, JR., J.