IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT ALEXANDER and JAMES LEE REED, individually and on behalf of all others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 2:07-cv-04426-TON |
| v. | ) ) | |
| WASHINGTON MUTUAL, INC., WASHINGTON MUTUAL BANK, WASHINGTON MUTUAL BANK fsb, and WM MORTGAGE REINSURANCE COMPANY, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**FDIC-RECEIVER'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO
DISMISS THE COMPLAINT**

Pursuant to Federal Rule of Civil Procedure 12(b)(1), the Federal Deposit Insurance Corporation, in its capacity as Receiver for Washington Mutual Bank ("FDIC-Receiver"), respectfully submits this Memorandum of Law in support of its motion to dismiss the Complaint.

## I.     INTRODUCTION

Plaintiffs Robert Alexander and James Lee Reed ("Plaintiffs") allege that Washington Mutual, Inc. ("WMI") and several of its subsidiaries, including Washington Mutual Bank ("WMB"), violated the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 et seq. ("RESPA"), by allegedly collecting illegal referral or kickback payments in the form of reinsurance premiums.  Plaintiffs' claims must be dismissed, as a matter of law, because this Court lacks subject matter jurisdiction to award the relief that Plaintiffs seek against FDIC-Receiver.

Over a year after Plaintiffs filed this action, WMB failed, and the FDIC was appointed as Receiver for WMB.  WMB's failure and the appointment of the FDIC as Receiver caused fundamental changes for all suits that were pending against WMB, including this case.  Simply put, "[t]he world changes when a bank goes into receivership." FDIC v. Shain, Schaffer & Rafanello, 944 F.2d 129, 134 (3d Cir. 1991).  Most importantly, the alleged wrongdoer against whom Plaintiffs sought relief and against whom Plaintiffs sought to certify a class — WMB — no longer exists.  FDIC-Receiver now stands in place of WMB.  As a result, the types of relief that may be pursued by Plaintiffs, and the manner in which such relief may be pursued, are governed and limited by the Financial Institutions Reform, Recovery and Enforcement Act of 1989, Pub. L. No. 101-73, 103 Stat. 183 (1989) ("FIRREA").

First, Plaintiffs seek statutory penalties and attorneys' fees under RESPA, 12 U.S.C. § 2607(d).  However, under FIRREA, such punitive relief may not be awarded against FDIC-Receiver as a matter of law.  See 12 U.S.C. § 1825(b)(3).

Second, Plaintiffs seek injunctive and declaratory relief on behalf of a putative class, presumably pursuant to 12 U.S.C. § 2607(d).[1]  Plaintiffs' request for equitable relief against FDIC-Receiver must be dismissed for lack of subject matter jurisdiction.  Section 2607(d) of RESPA does not provide individuals with a private right of action to seek injunctive relief.  Instead, the only parties who may pursue injunctive relief under Section 2607(d) are "[t]he Secretary, the Attorney General of any State, or the insurance commissioner of any State."  12 U.S.C. § 2607(d).  Moreover, Plaintiffs' request for equitable relief against FDIC-Receiver is moot because FDIC-Receiver does not hold Plaintiffs' loans, nor does FDIC-Receiver insure or reinsure Plaintiffs' loans.  Thus, there is no prospective relief that could be obtained from FDIC-Receiver.  Finally, FIRREA expressly removes jurisdiction from all courts to grant any form of equitable relief against FDIC-Receiver, including injunctive and declaratory relief.  See 12 U.S.C. § 1821(j).

Because this Court lacks subject matter jurisdiction to award any of the relief sought by Plaintiffs, Plaintiffs' claims must be dismissed as a matter of law.

## II.   BACKGROUND

On October 22, 2007, Plaintiffs, individually and on behalf of a putative class, initiated this action against WMB and other defendants.  According to the Complaint, Plaintiffs obtained home mortgage loans from WMB.  See Compl., ¶¶ 10-11.  Because Plaintiffs purchased their homes with a down payment of less than 20 percent, they were required to purchase private mortgage insurance ("PMI").  Id.  Plaintiffs allege that WMB and various PMI providers agreed to an arrangement whereby WMB would refer its borrowers to the PMI providers and, in exchange for the referral, the PMI providers would purchase mortgage reinsurance from an

---

[1]  Plaintiffs' inability, as a matter of law, to assert claims on behalf of a putative class is addressed in FDIC-Receiver's Motion to Strike Class Allegations from the Complaint, which has been filed concurrently with this Motion.

affiliate of WMB.  Id., ¶¶ 44-45.  Plaintiffs allege that this arrangement violated Sections 2607(a)

and 2607(b) of RESPA, which provide:

> (a) Business referrals
>
> No person shall give and no person shall accept any fee, kickback,
> or thing of value pursuant to any agreement or understanding, oral
> or otherwise, that business incident to or a part of a real estate
> settlement service involving a federally related mortgage loan shall
> be referred to any person.
>
> (b) Splitting charges
>
> No person shall give and no person shall accept any portion, split,
> or percentage of any charge made or received for the rendering of a
> real estate settlement service in connection with a transaction
> involving a federally related mortgage loan other than for services
> actually performed.

12 U.S.C. §§ 2607(a) and (b).  Plaintiffs allege that WMB, through its affiliate, did not provide

any actual settlement service in return for the reinsurance payments, and thus such payments

constituted illegal kickbacks.  See Compl., ¶¶ 60-67.  Based on these alleged RESPA violations,

Plaintiffs assert that under Section 2607(d)(2) they are entitled to recover from WMB an amount

equal to three times the amount Plaintiffs' paid for private mortgage insurance, as well as

attorneys' fees.  See id., ¶¶ 92-93.  Plaintiffs also seek certification of a class pursuant to Rule

23(b)(2) in order to seek injunctive and declaratory relief from WMB.  Id., ¶ 80.  Notably,

Plaintiffs do not allege that they purchased mortgage insurance from WMB, or that their PMI

provider purchased reinsurance from WMB.

On December 21, 2007, WMB moved to dismiss the Complaint on grounds that are not

relevant to the instant Motion.  See Dkt. # 10.  On June 30, 2008, this Court denied WMB's

motion to dismiss.  See Dkt. # 21.

On September 25, 2008, the Office of Thrift Supervision closed WMB and appointed the FDIC as Receiver.  On February 23, 2010, FDIC-Receiver was substituted for WMB as the real party-in-interest in this action.  Dkt. # 43.

III.   ARGUMENT

A.   Plaintiffs' Claim For Statutory Penalties Must Be Dismissed.

The relief that Plaintiffs seek under 12 U.S.C. § 2607(d)(2) is undisputedly in the nature of a penalty and therefore cannot be awarded against FDIC-Receiver as a matter of law. Accordingly, Count I must be dismissed.

1.   Federal law prohibits punitive relief against FDIC-Receiver.

"[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there."  Carcieri v. Salazar, 129 S. Ct. 1058, 1066-67 (2009).  If the statutory language is unambiguous, courts "must apply the statute according to its terms."  Id. at 1063-64; accord Pavelic & LeFlore v. Marvel Entertainment Group, Div. of Cadence Industries Corp., 493 U.S. 120, 126 (1989) ("Our task is to apply the text, not to improve upon it."); TVA v. Hill, 437 U.S. 153, 194, 98 (1978) (The plain meaning of the text cannot "be put aside in the process of interpreting a statute" regardless of "the wisdom or unwisdom of a particular course consciously selected by the Congress.").

In 12 U.S.C. § 1825(b)(3), Congress provided that the FDIC as Receiver "shall not be liable for any amounts in the nature of penalties or fines."  That language could not be clearer: courts lack jurisdiction to award any punitive relief against the Receiver.  As the U.S. Court of Appeals for the Second Circuit has explained, "subsection (3) [of Section 1825(b)] forecloses liability for 'any amounts in nature of penalties or fines,' without qualification."  Nat'l Loan Investors L.P. v. Town of Orange, 204 F.3d 407, 410 (2d Cir. 2000) (emphasis added).  Thus, in two recent decisions, the U.S. District Court for the District of Massachusetts and the U.S.

District Court for the Central District of California relied on Section 1825(b)(3) to dismiss claims for penalties and punitive damages against FDIC-Receiver.  See King v. Long Beach Mortgage Co., No. 06-11931-WGY, 2009 WL 4716042, at *6 (D. Mass. Dec. 12, 2009) ("Even if this Court were inclined to impose punitive damages or fines, the FDIA [Federal Deposit Insurance Act] provides the FDIC with a complete defense.   The defense is found in 12 U.S.C. § 1825(b)(3), which states that as Receiver, the FDIC 'shall not be liable for any amounts in the nature of penalties or fines . . . .'"); Yniguez v. Washington Mutual Bank, 2:07-cv-03137-R-SH (C.D. Cal. Dec. 8, 2009), appeal docketed, No. 10-55026 (9th Cir. Jan. 7, 2010) (relying on Section 1825(b)(3) to dismiss claims for penalties and punitive damages under The Truth in Lending Act) (attached as Exhibit A).  Likewise, in this case, Plaintiffs are not entitled to any remedies "in the nature of penalties or fines."[2]

Although the interpretation of Section 1825(b)(3) must begin and end with the unambiguous language of the statute, even if one looks beyond Section 1825(b)(3)'s plain language, it is clear that the statute was intended to prohibit all penalties against the FDIC as Receiver.  The meaning of a statute can be informed by the policies and goals underlying the statute.  See Scafar Contracting, Inc. v. Secretary of Labor, 325 F.3d 422, 429 n.6 (3d Cir. 2003).

---

[2]   Any suggestion based on Hennessy v. FDIC, 58 F.3d 908 (3d Cir. 1995) that Section 1825(b)(3)'s prohibition on penalties is limited to taxation is wrong.  In Hennessy, the Third Circuit was reviewing Campbell v. FDIC, Civ. A. No. 93-3969, 1994 WL 475067 (E.D. Pa. Aug. 29, 1994), in which the district court exercised its discretion not to award ERISA penalties against the FDIC as Receiver.  1994 WL 475067, at *7.  The Third Circuit affirmed that ruling. Hennessy, 58 F.3d at 924.  However, in a brief footnote, the Third Circuit noted, without any explanation, that it found "unconvincing" the Receiver's argument that Section 1825(b)(3) applies outside of the context of taxes.  Id. at 924 n.11.  That statement was purely dictum because Section 1825(b)(3), which the Third Circuit did not analyze in any detail, had no bearing on the decision to not penalize the Receiver in that case.  As such, the Third Circuit's brief mention of Section 1825(b)(3) in Hennessy has no precedential effect here.  See Galli v. New Jersey Meadowlands Comm'n, 490 F.3d 265, 274 (3d Cir. 2007) (explaining that dicta is not controlling authority).  Instead, the plain language of Section 1825(b)(3) should control.

A central goal of FIRREA is "to dispose of the bulk of claims against failed financial institutions expeditiously and fairly."  H.R. Rep. No. 101-54(I) at 419, <u>as reprinted in</u> 1989 U.S.C.C.A.N. 86, 215.  Section 1825(b)(3)'s prohibition on all penalties promotes fairness because it maximizes the assets of the failed bank that will be available to satisfy claims for actual damages.  Otherwise, each dollar spent paying a penalty is one less dollar that goes toward satisfying claims for actual damages.  Similarly, a prohibition on punitive relief will allow the affairs of the failed bank to be wrapped up more quickly because the Receiver will not have to litigate claims involving solely the pursuit of penalties, and also because more claimants will be inclined to settle their claims for actual damages.

The scope of Section 1825(b)(3) is also underscored by subsequent amendments to the Federal Deposit Insurance Act ("FDIA").  Before FIRREA amended the FDIA, subsection (b) of Section 1825 contained only paragraph (1).  <u>See</u> FDIA, § 15.  Section 219 of FIRREA amended Section 1825(b) by adding paragraphs (2) and (3).  <u>See</u> FIRREA, § 219.  At the time, Section 219 was titled "Exemption From Taxation; Limitation on Borrowing."  <u>Id</u>.  Two years later, however, in the Federal Deposit Insurance Corporation Improvement Act of 1991, Pub. L. No. 102-242, 105 Stat. 2236 (1991) ("FDICIA"), Congress amended FIRREA by striking the words "From Taxation" from the title of Section 219, leaving only the word "Exemption."  <u>See</u> FDICIA, § 161(f)(1).  The deletion of "From Taxation" from the title of Section 219 confirms that the Receiver is immune from all fines and penalties, not merely those related to taxation.  A subsequent amendment to Section 1825 further supports the plain meaning of subsection (b)(3).  In the Financial Services Regulatory Relief Act of 2006, Pub. L. No. 109-351, 120 Stat. 1966 (2006) ("FSRRA"), Congress added paragraph (4) to Section 1825(b), titled "Exemption from criminal prosecution."  Paragraph (4) exempts the Receiver from "all prosecution . . . for any

criminal offense." 12 U.S.C. § 1825(b)(4) (emphasis added). That Congress included such a broad exemption immediately after the exemption for penalties or fines supports a similarly broad interpretation of subsection (b)(3).

Further, Section 1825(b)(3)'s prohibition on all penalties against the Receiver is consistent with the broad immunity provided to federal agencies under federal common law. <u>See</u> <u>Cohen v. FDIC</u>, No. CIV. A. 91-CV-3944, 2003 WL 21118673, at *8 (E.D. Pa. May 14, 2003) <u>aff'd</u>, 107 F. App'x 287 (3d Cir. 2004) ("Punitive damages may not be awarded against an agency or instrumentality of the United States absent congressional authorization.").[3] The reasons supporting the grant of immunity to federal agencies apply with equal force where the FDIC acts as Receiver for a failed financial institution.

Finally, as a matter of public policy, an award of statutory penalties against FDIC-Receiver would not advance the two main objectives for awarding such relief: to punish wrongdoers and to deter others from committing similar offenses. <u>See</u> <u>City of Newport v. Fact Concerts, Inc.</u>, 453 U.S. 247, 266-67 (1981) ("Punitive damages by definition are not intended to compensate the injured party, but rather to punish the tortfeasor whose wrongful action was

---

[3] <u>See</u> <u>also</u> <u>Bank One, Texas, N.A. v. Taylor</u>, 970 F.2d 16, 33 (5th Cir. 1992) ("It is established law that agencies of the United States cannot be held liable for punitive fines or assessments absent express Congressional authorization."); <u>Commerce Fed. Sav. Bank v. FDIC</u>, 872 F.2d 1240, 1247 (6th Cir. 1989) ("the United States and its instrumentalities are immune from suit except to the extent that such immunity has been waived"); <u>Smith v. Russellville Prod. Credit Ass'n</u>, 777 F.2d 1544, 1549 (11th Cir. 1985) ("The established rule is that punitive damages cannot be recovered from the United States or its agencies."); <u>Rohweder v. Aberdeen Prod. Credit Ass'n</u>, 765 F.2d 109, 113 (8th Cir. 1985) ("The United States, its agencies and instrumentalities, cannot be held liable for punitive damages in the absence of express statutory authorization."); <u>Lanigan v. RTC</u>, No. 91 C 7216, 1994 WL 8160, at *5 (N.D. Ill. Jan. 11, 1994) ("Under federal common law, it is a long-established principle that punitive damages may not be awarded against an agency or instrumentality of the United States absent congressional authorization."); <u>Southwest Motor Coach Corp.</u>, 780 F. Supp. 421, 423 (N.D. Tex. 1991) ("The United States and its agencies are immune from suit except to the extent that such immunity has been waived.").

intentional or malicious, and to deter him and others from similar extreme conduct."). Neither of those objectives are met when the FDIC is acting as Receiver for a failed financial institution. Rather than punishing the alleged wrongdoer — here, the failed bank, which no longer exists — an award of penalties against FDIC-Receiver "would only serve to punish innocent creditors of the failed institution by diminishing available assets" and "could have no deterrent effect." FDIC v. Claycomb, 945 F.2d 853, 861 (5th Cir. 1991).[4]

        2.     Plaintiffs undisputedly are seeking penalties under Section 2607(d)(2).

The scope of Section 1825(b)(3) is not limited by the label given to any particular requested relief. Instead, it is the nature of the relief being sought that must be examined to determine if it is punitive. See Missouri Pac. R.R. Co. v. Ault, 256 U.S. 554, 565 (1921) ("[w]hatever named be applied," what matters is whether "the element of punishment clearly predominates"). "Penalty" is "[p]unishment imposed on a wrongdoer, usually in the form of imprisonment or fine; especially, a sum of money exacted as punishment for either a wrong to the state or a civil wrong (as distinguished from compensation for the injured party's loss)." Black's Law Dictionary 1168 (8th ed. 2004). The term "penalty" encompasses a broad spectrum of punitive measures. The defining characteristic of a penalty is its objective to punish and deter. See, e.g., Flick v. Borg-Warner Corp., 892 F.2d 285, 295 (3d Cir. 1989) (29 U.S.C. § 1132(c) operates as a penalty because "[i]t is deterrent and punitive in nature, not compensatory . . . .").

---

[4] Accord Monrad v. FDIC, 62 F.3d 1169, 1175 (9th Cir. 1995) (observing that an award of punitive damages against FDIC as receiver would have minimal deterrent effect and would punish innocent creditors by diminishing available assets); Tuxedo Beach Club Corp. v. City Fed. Sav. Bank, 749 F. Supp. 635, 649 (D.N.J. 1990) ("[P]unitive damages are imposed to punish the wrongdoer and deter others; these considerations have little weight, however, where the wrongful party is in receivership and the fine would ultimately be paid by innocent creditors."); Prof'l Asset Mgmt., Inc. v. Penn Square Bank, N.A., 566 F. Supp. 134, 137 (W.D. Okla. 1983) ("an award of punitive damages against the receiver would not punish the Bank, but its innocent creditors and uninsured depositors").

Here, there can be no dispute that the relief Plaintiffs seek under Section 2607(d)(2) is in the nature of a penalty.  See Dujanovic v. MortgageAmerica, Inc., 185 F.R.D. 660, 667 n.9 (N.D. Ala. 1999) ("Treble damages, plus court costs and reasonable attorneys fees are penalties for RESPA violations set forth in 12 U.S.C. § 2607(d)(2) and (5).").  In fact, in their Opposition to Defendants' Motion to Dismiss, Plaintiffs conceded that they are seeking punitive relief: "Plaintiffs are asking that the Court order the Defendants to pay a statutorily prescribed penalty for violating RESPA's prohibitions on kickbacks."  See Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss at 2 (Dkt. # 16) (emphasis added); id., at 21 ("Section 8(d)(2) [of RESPA] was amended to provide for the calculation of the statutory penalty to be made . . . .") (emphasis added).  Thus, it is undisputed that Plaintiffs seek statutory penalties against FDIC-Receiver under Section 2607(d)(2).  Because such punitive relief is precluded against FDIC-Receiver as a matter of federal law, Count I must be dismissed.

B.    Attorneys Fees' Are Punitive And Cannot Be Awarded Against FDIC-Receiver.

In Count I, Plaintiffs request an award of attorneys' fees under Section 2607(d)(5). However, FIRREA prohibits attorneys' fees from being awarded against FDIC-Receiver for two reasons.

First, as with claims for punitive relief, such an award would "run afoul of the requirement that the assets of a failed bank be ratably distributed among the bank's creditors holding approved or adjudicated claims."  Interfirst Bank-Abilene, N.A. v. FDIC, 777 F.2d 1092, 1097 (5th Cir. 1985) (ratable distribution requirement in National Banking Act ("NBA") superseded state law providing for attorneys' fees in contract cases); see also 12 U.S.C. § 1821(i) (provision of FIRREA requiring ratable distribution of receivership assets).  For over a century, courts have barred claims for attorneys' fees against bank receiverships as impermissible preferences which, if allowed, would contravene ratable distribution requirements by preferring

certain creditors over others.[5]   This is the case for both national bank and thrift receiverships.

Compare 12 U.S.C. § 194 (ratable distribution required under NBA) with 12 U.S.C. § 1821(i) (ratable distribution required under FIRREA).

Second, an award of attorneys' fees is barred under 12 U.S.C. § 1825(b)(3) because it would constitute an impermissible penalty.  See Dujanovic, 185 F.R.D. at 667 n.9 (characterizing attorneys' fees under RESPA as a penalty); see also Yniguez, No. 2:07-cv-03137-R-SH (C.D. Cal. Dec. 8, 2009) (relying on Section 1825(b)(3) to dismiss a claim for attorneys' fees against the FDIC as Receiver).  Courts have routinely characterized fee awards as being penal in nature. See, e.g., In re Sterten, 546 F.3d 278, 280 (3d Cir. 2008) (describing attorneys' fees as part of the penalty under TILA for inaccurate disclosure).[6]   Accordingly, because they are precluded by federal law, Plaintiffs' claim for attorneys' fees must be dismissed.

---

[5]  See, e.g., U.S. ex rel. White v. Knox, 111 U.S. 784, 788 (1884) ("No provision is made by law for the payment of the expenses of the claimant . . . and necessarily that loss must fall on [the claimant.]"); Fash v. First Nat'l Bank, 89 F.2d 110, 112 (10th Cir. 1937) (fees "would constitute a plain impingement upon the . . . ratable distribution of the assets"); Citizens' Bank & Trust Co. v. Thornton, 174 F. 752, 763 (5th Cir. 1909) (allowing fees provided for in contract would be "a penalty upon other creditors to the extent that the amount allowed . . . diminishes [their] dividends, which otherwise must be based ratably upon the real indebtedness of the insolvent debtor").

[6]  See also Sanders v. Jackson, 209 F.3d 998, 1004 (7th Cir. 2000) (in the context of the Federal Debt Collection Practices Act, explaining that "attorneys' fees are punitive in the broad sense of the term in that they deprive the defendant of capital and thereby provide a strong incentive not to violate the law"); Marquart v. Lodge 837, Int'l Ass'n of Machinists and Aerospace Workers, 26 F.3d 842, 848 (8th Cir. 1994) ("an award of attorneys' fees to prevailing Title VII Plaintiffss is also a means by which Congress can punish employers who violate federal law"); Wright v. Fin. Serv. of Norwalk, Inc., 22 F.3d 647, 651 (6th Cir. 1994) (noting deterrent effect of attorneys' fees remedy under the FDCPA); Smith v. Chapman, 614 F.2d 968, 971 (5th Cir. 1980) (attorneys' fees part of TILA's "entire penalty" against lender); Williams v. Pub. Fin. Corp., 598 F.2d 349, 359 (5th Cir. 1979) (noting TILA's "attorney fee penalty"); Farmington Dowel Prods. Co. v. Forster Mfg. Co., 421 F.2d 61, 90 (1st Cir. 1970) (payment of attorney's fees by a losing defendant was "part of his penalty for having violated the antitrust laws"); Harris v. Coldwell Banker Real Estate Corp., No. 4:05CV176-P-A, 2007 WL 3197231, at *1 (N.D. Miss. Oct. 26, 2007) (attorneys' fees under RICO are punitive in nature).

C.      Plaintiffs' Claim For Equitable Relief Must Be Dismissed For Lack Of Jurisdiction.

In their class action allegations, Plaintiffs assert that a class should be certified under Rule 23(b)(2) because "Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."  Compl., ¶ 80.  Any claim by Plaintiffs for equitable relief against FDIC-Receiver must be rejected for lack of subject matter jurisdiction.

1.      There is no private right of action for individuals to seek equitable relief under 12 U.S.C. § 2607(d).

In Section 2607(d), Congress expressly limited the types of relief available to individual plaintiffs when seeking to remedy violations of that section.  The plain language of Section 2607(d)(4) provides that only "[t]he Secretary, the Attorney General of any State, or the insurance commissioner of any State" may seek to enjoin violations of Section 2607.  See also Minter v. Wells Fargo Bank, N.A., 593 F. Supp. 2d 788, 796 (D.Md. 2009) (holding that "there is no private right to injunctive relief under RESPA").  Accordingly, Plaintiffs' request for equitable relief under Section 2607(d) must be dismissed as a matter of law.

2.      Plaintiffs' claim for equitable relief is moot.

"No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies."  Simon v. Eastern Ky. Welfare Rights Org., 426 U.S. 26, 37 (1976).  "The case-or-controversy [doctrine] underpins both standing and mootness."  Friends of the Earth v. Laidlaw Envtl. Servs. (TOC), 528 U.S. 167, 180 (2000) (citation and ellipsis omitted).

The mootness doctrine has been described as "the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of litigation (standing) must continue throughout its existence (mootness)."  Arizonans for Official English v.

<u>Arizona</u>, 520 U.S. 43, 68 (1997).  "A central question in determining mootness is whether a change in circumstances since the beginning of the litigation precludes any occasion for meaningful relief."  <u>Surrick v. Killion</u>, 449 F.3d 520, 526 (3d Cir. 2006) (citation omitted).

To have standing to pursue injunctive or declaratory relief, a plaintiff "must allege facts from which it appears there is a substantial likelihood that he will suffer injury <u>in the future</u>." <u>Blakeney v. Marsico</u>, No. 09-1285, 2009 WL 2447492, at *2 (3d Cir. Aug. 11, 2009) (emphasis added) (citation omitted); <u>see</u> <u>also</u> <u>O'Shea v. Littleton</u>, 414 U.S. 488, 495-96 (1974) ("[p]ast exposure to illegal conduct does not in itself show a present case or controversy" for claims seeking declaratory and injunctive relief).  If an event occurs during a case "that makes it impossible for the court to grant any effectual relief whatever to a prevailing party," the case "must be dismissed."  <u>Church of Scientology v. United States</u>, 506 U.S. 9, 12 (1992) (citations omitted).  In this case, because FDIC-Receiver does not hold Plaintiffs' loans, or have any connection to the collection of PMI payments or reinsurance payments, there is no prospective relief that could be obtained from FDIC-Receiver.  Accordingly, Plaintiffs' claim for declaratory and injunctive relief against FDIC-Receiver is moot and should be dismissed.

       3.    <u>12 U.S.C. § 1821(j) prohibits the award of equitable relief against FDIC-Receiver</u>.

Even if Plaintiffs could, in theory, seek equitable relief under Section 2607 and their claim was not moot, the requested equitable relief still could not be granted against FDIC-Receiver because such relief is precluded by 12 U.S.C. § 1821(j).

In Section 1821(j), Congress expressly removed from all courts subject matter jurisdiction to grant equitable relief against FDIC-Receiver:

> LIMITATION ON COURT ACTION.—Except as provided in this section, no court may take any action . . . to restrain or affect the exercise of powers or functions of the Corporation as a conservator or a receiver.

12 U.S.C. § 1821(j).  The powers given to the Receiver in FIRREA are "unprecedented." Sunshine Dev., Inc. v. FDIC, 33 F.3d 106, 111 (1st Cir. 1994); accord Rosa v. RTC, 938 F.2d 383, 398 (3d Cir. 1991) (Receiver's powers are "quite broad, in keeping with the emergent objectives of the statute.").  FIRREA grants the Receiver "power to take all actions necessary to resolve problems posed by financial institutions in default." H.R. Rep. No. 101-54(I) at 330, as reprinted in 1989 U.S.C.C.A.N. 86, 126.  Congress gave the Receiver such broad powers so that it would be able to "resolve failed institutions in an expeditious manner." H.R. Rep. No. 101-54(I) at 322, as reprinted in 1989 U.S.C.C.A.N. 86, 118.

As the Third Circuit has recognized, Section 1821(j) was "intended to permit the FDIC to perform its duties as . . . receiver promptly and effectively without judicial interference." Hindes v. FDIC, 137 F.3d 148, 160 (3d Cir. 1998); accord Rosa, 938 F.2d at 397; Gross v. Bell Sav. Bank PaSA, 974 F.2d 403, 404, 406 (3d Cir. 1992).[7]  In Section 1821(j), "Congress has expressed its clear intent to prohibit equitable or declaratory relief that may interfere with the FDIC's powers."  Radian Ins., Inc. v. Deutsche Bank Nat'l Trust Co., et al., No. 08-2993, 2009 WL 3163557, at *15 (E.D. Pa. Oct. 1, 2009).  "To that end, numerous courts have found that the Section 1821(j) bar applies to various different types of requests for equitable relief, including requests for an injunction."  Id. at *5.  As the U.S. Court of Appeals for the D.C. Circuit has

---

[7]  In addition to the Third Circuit, ten other Circuits have held that Section 1821(j) means exactly what it says: courts lack jurisdiction to take any action that would restrain or affect the Receiver's exercise of its statutory powers and functions.  See, e.g., Courtney v. Halleran, 485 F.3d 942, 948 (7th Cir. 2007), cert. denied, 128 S. Ct. 1256 (2008); Hanson v. FDIC, 113 F.3d 866, 871 (8th Cir. 1997); Bursik v. One Fourth St. N., Ltd., 84 F.3d 1395, 1397 (11th Cir. 1996); Sahni v. American Diversified Partners, 83 F.3d 1054, 1058 (9th Cir. 1996); Barrows v. RTC, 39 F.3d 1166 (table), No. 94-1555, 1994 WL 643309, at *3 (1st Cir. Nov. 15, 1994); Tillman v. RTC, 37 F.3d 1032, 1036 (4th Cir. 1994); Volges v. RTC, 32 F.3d 50, 52 (2d Cir. 1994); Carney v. RTC, 19 F.3d 950, 956 (5th Cir. 1994); National Trust for Historic Pres. v. FDIC, 21 F.3d 469, 472 (D.C. Cir. 1994), reinstating in part, 995 F.2d 238 (D.C. Cir. 1993); United Liberty Life Ins. Co. v. Ryan, 985 F.2d 1320, 1329 (6th Cir. 1993).

explained, Section 1821(j) "effect[s] a sweeping ouster of courts' power to grant equitable remedies." Freeman v. FDIC, 56 F.3d 1394, 1399 (D.C. Cir. 1995). Otherwise, "[s]uch judicial interference would dramatically limit the FDIC's ability to exercise its statutory powers efficiently and effectively." Telematics Int'l., Inc. NEMLC Leasing Corp., 967 F.2d 703, 706 (1st Cir. 1992).

Moreover, because "there is little practical difference between injunctive and declaratory relief," California v. Grace Brethren Church, 457 U.S. 393, 408 (1982), the Third Circuit and other Circuits have consistently relied on Section 1821(j) to reject claims for declaratory relief against the Receiver. See Hindes, 137 F.3d at 161 (§ 1821(j) precludes declaratory relief).[8] The Third Circuit and other courts have also uniformly recognized that Section 1821(j) bars equitable relief "even where the [Receiver] acts in violation of other statutory schemes." Gross, 974 F.2d at 407.[9]

---

[8] Accord Carney, 19 F.3d at 958; Courtney, 485 F.3d at 948 (affirming dismissal of plaintiff's claim for declaratory relief, injunctive relief, and other equitable relief because § 1821 does not authorize such relief, on the contrary "we see nothing but language that reinforces § 1821(j)"); Freeman, 56 F.3d at 1399 ("where appellants seek a declaratory judgment that would effectively 'restrain' the FDIC from foreclosing on their property, § 1821(j) deprives the court of power to grant that remedy as well"); Nat'l Trust, 21 F.3d at 471 n.2 ("there is . . . so 'little practical difference between injunctive and declaratory relief' that a statute barring injunctions will also have the effect of barring declaratory judgments") (quoting Grace Brethren Church, 457 U.S. at 408-09); Radian, 2009 WL 3163557, at *14 (dismissing claim for declaratory relief under § 1821(j) because it would restrain or affect the FDIC as receiver in the exercise of its statutory powers); Trinsey v. K. Hovnanian, 841 F. Supp. 694, 695 (E.D. Pa. 1994) (holding that court was barred from considering plaintiff's request for declaration of rights with respect to asset owned by failed institution).

[9] Accord Volges, 32 F.3d at 52 (§ 1821(j) prohibits equitable relief if "the [Receiver]'s actions might violate some other provision of law."); Ward v. RTC, 996 F.2d 99, 102 (5th Cir. 1993) ("courts may not enjoin the activities of the [FDIC] merely because someone alleges that it is not running the [failed bank's] affairs in a legal manner."); Bursik, 84 F.3d at 1397 (§ 1821(j) "has been interpreted [by the other circuits] to restrict injunctions, and other equitable relief against the [Receiver]. . . even if the [Receiver] violates its own procedures or behaves unlawfully").

In this case, even assuming, for the sake of argument, that FDIC-Receiver held Plaintiffs loans or had some involvement in the collection of PMI payments or reinsurance payments, Plaintiffs' requested equitable relief against FDIC-Receiver would plainly be barred by Section 1821(j).  By attempting to dictate, even hypothetically, FDIC-Receiver's collection of monies from borrowers, Plaintiffs are demanding equitable relief that would effectively prevent FDIC-Receiver from carrying out its statutory powers and functions, including taking actions to "collect all obligations and money due the institution," and to "preserve and conserve the assets and property of [the] institution."  12 U.S.C. § 1821(d)(2)(B)(ii), (iv).  Any such equitable relief is expressly prohibited by Section 1821(j).  Accordingly, Plaintiffs' request for injunctive and declaratory relief must be dismissed for lack of subject matter jurisdiction.

## IV.    CONCLUSION

For the foregoing reasons, FDIC-Receiver requests that its Motion to Dismiss be granted and that all claims against FDIC-Receiver be dismissed.

March 1, 2010                          Respectfully submitted,

|  |  |
|---|---|
| Of Counsel:<br>Kathryn R. Norcross<br>Senior Counsel<br>Susan Kantor Bank<br>Counsel<br>Federal Deposit Insurance Corporation<br>Legal Division<br>3501 Fairfax Drive, VS-D-7126<br>Arlington, VA  22226<br>Tel: (703) 562-2389 | */s/ David A. Super*<br>David A. Super (*pro hac vice* application pending)<br>david.super@bakerbotts.com<br>Richard P. Sobiecki<br>rich.sobiecki@bakerbotts.com<br>Baker Botts L.L.P.<br>The Warner<br>1299 Pennsylvania Ave., NW<br>Washington, DC 20004-2400<br>Tel: (202) 639-7700<br><br>Martin C. Bryce, Jr.<br>Ballard Spahr LLP<br>1735 Market Street, 51st Floor<br>Philadelphia, PA, 19103<br>Tel: (215) 864-8238<br><br>Attorneys for FEDERAL DEPOSIT INSURANCE CORPORATION as Receiver for WASHINGTON MUTUAL BANK |