IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT ALEXANDER and JAMES LEE REED, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 2:07-cv-04426-TON |
| | ) | |
| v. | ) | |
| | ) | |
| WASHINGTON MUTUAL, INC., WASHINGTON MUTUAL BANK, WASHINGTON MUTUAL BANK fsb, and WM MORTGAGE REINSURANCE COMPANY, | ) ) ) ) ) | |
| | ) | |
| Defendants. | ) ) | |

## MEMORANDUM OF LAW IN SUPPORT OF FDIC-RECEIVER'S MOTION TO STRIKE CLASS ALLEGATIONS FROM THE COMPLAINT

Pursuant to Federal Rule of Civil Procedure 23(d)(1), the Federal Deposit Insurance Corporation, in its capacity as Receiver for Washington Mutual Bank ("FDIC-Receiver"), respectfully submits this Memorandum of Law in Support of its Motion To Strike Class Allegations From The Complaint.

## I.   INTRODUCTION

On October 22, 2007, Plaintiffs Robert Alexander and James Lee Reed ("Plaintiffs") brought this putative class action against Washington Mutual Bank ("WMB") among other defendants.  On September 25, 2008, the Office of Thrift Supervision ("OTS") closed WMB and appointed the FDIC as Receiver for WMB.  WMB's failure and the appointment of the FDIC as Receiver caused fundamental changes for all suits that were pending against WMB at the time of its failure, including this case.  Simply put, "[t]he world changes when a bank goes into receivership."  FDIC v. Shain, Schaffer & Rafanello, 944 F.2d 129, 134 (3d Cir. 1991).  Most importantly, the alleged wrongdoer against whom the Plaintiffs sought relief and against whom the Plaintiffs sought to certify a class — WMB — no longer exists.  FDIC-Receiver now stands in place of WMB.  As a result, the types of relief that may be pursued by the Plaintiffs, and the manner in which such relief may be pursued, are governed by the Financial Institutions Reform, Recovery and Enforcement Act of 1989, Pub. L. No. 101-73, 103 Stat. 183 (1989) ("FIRREA").

In their Complaint, Plaintiffs assert that this action is brought on behalf of

> [A]ll persons who obtained federally-related residential mortgage loans through Washington Mutual and/or its subsidiaries and, in connection therewith, purchased private mortgage insurance and whose residential mortgage loans were included with Washington Mutual's captive mortgage reinsurance arrangements.

Compl., ¶ 70.  Plaintiffs' class allegations must be stricken, as a matter of law, because Plaintiffs' proposed class may not be certified in this case.  FIRREA requires that each individual claimant against the failed institution submit his or her claim to FDIC-Receiver in the mandatory

administrative claims process set forth in 12 U.S.C. §§ 1821(d)(3) through (13).  Therefore, any proposed class must be, at the very least, limited to individuals who have exhausted the administrative claims process.

In the event that Plaintiffs assert they have exhausted the claims process on behalf of the putative class through their submission of a purported "administrative class claim," any such assertion must be rejected.  FIRREA, like other federal statutory exhaustion schemes, does not provide for vicarious exhaustion through the submission of administrative class claims. Therefore, any attempt by Plaintiffs to exhaust the claims process on behalf of the putative class was a legal nullity.  Because Plaintiffs' class allegations are deficient as a matter of law, they should be stricken from the Complaint.

## II.     BACKGROUND

A.     The Mandatory Administrative Claims Process.

In FIRREA, Congress enacted a comprehensive statutory scheme granting the FDIC authority to act as Receiver for a failed financial institution.  FIRREA was intended to grant the Receiver "power to take all actions necessary to resolve problems posed by financial institutions in default."  H.R. Rep. No. 101-54(I) at 330, as reprinted in 1989 U.S.C.C.A.N. 86, 126.  The powers given to the Receiver in FIRREA are "unprecedented."  Sunshine Dev., Inc. v. FDIC, 33 F.3d 106, 111 (1st Cir. 1994); accord Rosa v. RTC, 938 F.2d 383, 398 (3d Cir. 1991) (Receiver's powers are "quite broad, in keeping with the emergent objectives of the statute.").[1]  Congress gave the Receiver such broad powers so that it would be able to "resolve failed institutions in an

---

[1]   Numerous courts have recognized the broad grant of power in FIRREA.  For example, the Eighth Circuit recognized that "Congress passed FIRREA as emergency legislation to resolve expeditiously the 'monumental problems involved with the unprecedented costs' of the savings and loan crisis."  RTC v. CedarMinn Bldg. Ltd. P'ship, 956 F.2d 1446, 1456 (8th Cir. 1992). The Third Circuit commented that FIRREA is "the most sweeping thrift reform law in the nation's history."  Praxis Props., Inc. v. Colonial Sav. Bank, 947 F.2d 49, 62 (3d Cir. 1991).

expeditious manner." H.R. Rep. No. 101-54(I) at 322, <u>as reprinted in</u> 1989 U.S.C.C.A.N. 86, 118. The FDIC, as Receiver, must conserve and preserve the failed institution's assets, liquidate those assets when appropriate, and use the proceeds of liquidation to make distributions among the institution's valid creditors. 12 U.S.C. §§ 1821(d)(2)(A)(ii); 1821(d)(2)(B) & (E). When making distributions to creditors, the Receiver must prioritize the payment of claims in accordance with federal statutory and regulatory requirements. <u>Id</u>. §§ 1821(i)(1) & (2); 12 C.F.R. § 360.2. Congress has given the Receiver discretion to determine the timing and amount of such distributions. 12 U.S.C. §§ 1821(d)(10)(A) & (B).

As an important part of the comprehensive scheme for winding up failed financial institutions, Congress created a statutory procedure for the orderly and efficient processing of claims. That administrative claims process, set forth in 12 U.S.C. §§ 1821(d)(3) through (13), centralizes the initial consideration and resolution of claims against a failed financial institution by requiring that all claims be submitted to the Receiver by the claims bar date, a date certain established by the Receiver. Once a timely administrative claim is submitted in the claims process, the Receiver has 180 days to determine whether to approve or disallow the claim. <u>Id</u>. § 1821(d)(5)(A)(i). The Receiver may disallow any portion of a timely claim that is not proven to the Receiver's satisfaction. <u>Id</u>. §§ 1821(d)(5)(C), 1821(d)(5)(D). Section 1821(d)(6)(A) also establishes that a claimant can file a new suit, or continue a pre-existing suit, on a claim within 60 days after the earlier of (i) the Receiver's initial determination of a claim, or (ii) termination of the 180-day period in which the Receiver may determine the claim. <u>Id</u>. § 1821(d)(6)(A). In such a suit, the claimant can seek a <u>de novo</u> judicial determination of her claim. <u>Id</u>. §§ 1821(d)(5)(A) & (E).

The administrative claims process is mandatory.  Thus, in Section 1821(d)(13)(D), Congress <u>withdrew jurisdiction</u> from <u>all courts</u> to hear claims against the FDIC as Receiver, except as granted elsewhere in Section 1821(d):

> (D)    Limitation on judicial review
>
> Except as otherwise provided in this subsection, <u>no court shall have jurisdiction over</u> —
>
> (i)    any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or
>
> (ii)    any claim relating to any act or omission of such institution or the Corporation as receiver.

<u>Id</u>. § 1821(d)(13)(D) (emphasis added).  Jurisdiction is "otherwise provided" by subsection 1821(d) only for those claimants who have completed the administrative claims process.  <u>Id</u>. §§ 1821(d)(6)(A)(ii),  (d)(7)(A),  &  (d)(8)(C).  Congress' overriding purpose for requiring exhaustion of the administrative claims procedures was to enable the Receiver "to dispose of the bulk of claims against failed financial institutions expeditiously and fairly."  H.R. Rep. No. 101-54(I) at 419, <u>as reprinted in</u> 1989 U.S.C.C.A.N. 86, 215.

Congress has defined FDIC-Receiver's obligations to provide notice of the claims process by statute.  <u>See</u> 12 U.S.C. § 1821(d)(3).[2]  On October 1, 2008, pursuant to 12 U.S.C. § 1821(d)(3)(B), FDIC-Receiver published notice in The Seattle Times, the Las Vegas Review-Journal/Las Vegas Sun Newspapers, and The Wall Street Journal notifying creditors that any

---

[2] FDIC-Receiver is required to promptly publish a notice to the failed institution's creditors to present their claims, and related proof, by a specified date at least 90 days following publication of the notice, and to republish such notice 30 and 60 days after it was initially made.  12 U.S.C. § 1821(d)(3)(B).  FDIC-Receiver must also provide notice by mail to "any creditor shown on the [failed] institution's books . . . ."  <u>Id</u>. § 1821(d)(3)(C).

claims against WMB must be submitted to FDIC-Receiver in the claims process by December 30, 2008.  See Exhibit A (Declaration of David Swiss), at ¶ 3 and Attachment 1.  Pursuant to Section 1821(d)(3)(B), the notices were re-published in The Seattle Times, the Las Vegas Review-Journal/Las Vegas Sun Newspapers, and The Wall Street Journal on October 31, 2008 (id., at ¶ 3 and Attachment 2), and again in The Seattle Times and the Las Vegas Review-Journal/Las Vegas Sun Newspapers on December 1, 2008.  Id., at ¶ 3 and Attachment 3.  FDIC-Receiver also carried out its duty to provide individual mail notice of the claims process and the December 30, 2008 bar date to all creditors listed on the books and records of WMB.  Id., at ¶¶ 4-5.

B.     The Status Of This Action.

On October 22, 2007, Plaintiffs brought this putative class action against WMB and other defendants.  On September 25, 2008, the OTS closed WMB and appointed the FDIC as Receiver for WMB.  See Dkt. # 42 (attaching OTS Order No. 2008-36 as Exhibit A).

On December 30, 2008, Plaintiffs filed a claim in the administrative claims process on behalf of themselves and purportedly on behalf of putative class members.  On April 22, 2009, FDIC-Receiver denied the individual claims of Mr. Alexander and Mr. Reed.

On February 23, 2010, FDIC-Receiver was substituted for WMB as the real party-in-interest in this action.

III.     ARGUMENT

A.     The Plaintiffs' Class Allegations Should Be Stricken From The Complaint.

Federal Rule of Civil Procedure 23(d)(1)(D) provides that "the court may issue orders that . . . require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly[.]"  See also Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 183 n.6 (1974) ("Under Rule 23(d)(4), the District Court may in some

instances require that pleadings be amended to eliminate class allegations.") (Douglas, J., dissenting in part). A motion to strike class allegations may be brought before a motion to certify the class "where the basis for the motion to strike is distinct from [the Rule 23] factors." Rahman v. Smith & Wollensky Rest. Group, Inc., No. 06 Civ. 6198 (LAK) (JCF), 2008 WL 161230, at *3 (S.D.N.Y. Jan. 16, 2008) ("[a] court may order deletion of portions of a complaint's class claims once it becomes clear that the plaintiffs cannot possibly prove the deleted portions of those claims.") (quoting 5 Moore's Federal Practice § 23-145 (3d ed. 2007)).

Plaintiffs' class allegations should be stricken from the Complaint because only those individuals who have exhausted FIRREA's administrative claims process could be part of a class certified against FDIC-Receiver. Although Plaintiffs purported to exhaust the claims process on behalf of the putative class, as explained below, FIRREA does not permit the submission of "administrative class claims" in the claims process. Because Plaintiffs only had the legal authority to submit an individual claim in the claims process, on behalf of themselves alone, it necessarily follows that Plaintiffs can "continue" this action only with respect to their individual claim. See 12 U.S.C. 1821(d)(6)(A).

1.      FIRREA does not allow for submission of class claims in the administrative claims process.

Pursuant to Section 1821(d)(6)(A), plaintiffs can continue a pre-Receivership lawsuit only after exhausting the administrative claims process. In this case, Plaintiffs exhausted the claims process and are attempting to continue this litigation, not only on behalf of themselves, but also on behalf of the putative class members. Plaintiffs attempt must fail because FIRREA "makes participation in the administrative claims review process mandatory for all parties asserting claims against failed institutions." Marquis v. FDIC, 965 F.2d 1148, 1151 (1st Cir. 1992) (emphasis added); accord Maher v. Harris Trust & Sav. Bank, 75 F.3d 1182, 1190 (7th

Cir. 1996) ("The administrative claims process provided by FIRREA requires that an <u>individual</u> who wishes to pursue <u>a claim</u> against a failed institution or its assets . . . present <u>that claim</u> to the receiver.") (emphasis added).[3]  Exhaustion of the administrative claims process is a jurisdictional prerequisite to the continuation of any lawsuit that was pending against the failed institution when the FDIC was appointed Receiver.  <u>See</u> 12 U.S.C. § 1821(d)(6).

Here, the interests of the putative class members were not encompassed within the claim that Plaintiffs submitted to FDIC-Receiver in the administrative claims process — <u>i.e.</u>, the claim that is now subject to a <u>de</u> <u>novo</u> judicial determination — because FIRREA does not allow for the submission of administrative class claims.  Therefore, Plaintiffs cannot rely on their individual exhaustion of the claims process as evidence of exhaustion of the claims process by the putative class members.

In considering whether FIRREA provides for the submission of class claims, "[t]he starting point . . . is the language of the statute itself."  <u>United States v. James</u>, 478 U.S. 597, 604 (1986).  "When a word is not defined by statute, [courts] normally construe it in accord with its ordinary or natural meaning."  <u>Smith v. United States</u>, 508 U.S. 223, 228 (1993); <u>see</u>, <u>e.g.</u>, <u>FDIC v. Meyer</u>, 510 U.S. 471, 476 (1994) (consulting Black's Law Dictionary to determine ordinary meaning).  In Section 1821(d)(5), entitled "Procedures for determination of claims," Congress repeatedly uses the singular word "claimant" to define the parameters of the claims process.  Although FIRREA does not specifically define the term, the word "claimant" is commonly understood as "[o]ne who asserts a right or demand."  <u>See</u> Black's Law Dictionary 265 (8th ed. 2004) (emphasis added).  Thus, based on its ordinary and natural meaning, a "claimant" under

---

[3]  Participation in the administrative claim review process is mandatory "regardless of whether the claims were filed before or after the [FDIC] was appointed receiver of the failed institution." <u>Carney v. RTC</u>, 19 F.3d 950, 955 (5th Cir. 1994).

Section 1821(d)(5) is one who asserts a claim based on his or her individual rights, and not an individual who is asserting multiple claims on behalf of a group of unknown individuals. Cf. Caidin v. United States, 564 F.2d 284, 287 (9th Cir. 1977) (concluding that a class claim could not be submitted where "neither the Federal Tort Claims Act nor the regulations have any specific provisions relating to filing 'class action' administrative claims against the United States"). It is simply not possible to reconcile FIRREA's individual exhaustion requirement with Plaintiffs' attempt to continue this action on behalf of a group of unknown persons who have not each exhausted the claims process themselves.

Nor can the concept of an administrative class claim, submitted on behalf of an unknown number of unknown individuals, be reconciled with the requirement under FIRREA that each claim in the claims process be "proved to the satisfaction of the receiver." 12 U.S.C. § 1821(d)(5)(B). Unless the word "proof" is stripped of all meaning, it is inconceivable that an administrative class claim could constitute adequate proof of a claim for each individual class member. To even consider an administrative class claim, the Receiver would be forced to speculate, or to conduct its own investigation, concerning (i) which borrowers purchased private mortgage insurance, (ii) of those borrowers who purchased private mortgage insurance, which borrowers had their loans reinsured, (iii) how much each borrower paid for private mortgage insurance and how much the reinsurer charged the primary insurer for coverage, and (iv) whether the primary insurer and reinsurer, who are legal entities separate from WMB, provided each borrower with services commensurate to what the borrower paid. By requiring administrative claims to be "proved to the satisfaction of the receiver" (see 12 U.S.C. § 1821(d)(5)(B)), FIRREA places the burden of proof squarely on the claimant, and nowhere does FIRREA allow the claimant to shift that burden to the Receiver, which is what an administrative class claim

would accomplish.  The individual proof requirement facilitates the Receiver's determination of claims, thereby conserving the assets of the Receivership estate.  Congress sought to avoid precisely the sort of speculative exercise that would be caused by the submission of an administrative class claim.

In a decision that is directly on point, the court in <u>Michels v. RTC</u>, No. CIV. 4-93-1167, 1994 WL 242162, at *2 (D. Minn. Apr. 13, 1994), considered the availability of class claims under FIRREA and dismissed such claims because there could be no litigation until the unnamed class members had individually exhausted the claims process.  Although the court recognized that "requiring each class member to exhaust FIRREA claim procedures may not be the most convenient or efficient method of resolving the parties' dispute," the court ruled that the language of FIRREA is clear, and that exhaustion by each individual class member is required. <u>Id.</u>; <u>see</u> <u>also</u> <u>Brandow v. FDIC</u>, No. 1:08-cv-02771, 2008 WL 5378348, at *2 (N.D. Ohio Dec. 22, 2008) ("Both parties acknowledge that FIRREA does not permit class claims."); <u>Estate of Wheeler v. RTC</u>, No. IP 90 1848 C, slip op. at 7 (S.D. Ind. June 1, 1993) (attached as Exhibit B) (lack of accommodation in FIRREA for class claims does not render claims process inadequate or relieve class members of requirement to exhaust claims process).  This case law confirms that FIRREA contains no language authorizing administrative class claims.  In contrast, no court has held that administrative class claims are permitted under FIRREA.  Furthermore, given Congress' repeated use of the singular word "claimant" in Section 1821(d)(5), and the absence of any reference to class claims in the text of the statute or legislative history, there is every indication that Congress did <u>not</u> intend to allow for class claims within the administrative exhaustion scheme it crafted.

2.     <u>Rule 23 is a rule of procedure that must give way to substantive federal law</u>.

Rule 23 does not (and cannot) supersede the requirements of FIRREA.  Rather, "Rule 23 . . . merely establishes the procedures for pursuing a class action <u>in the federal courts</u>."  <u>Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.</u>, 549 F.3d 137, 143 (2d Cir. 2008) (emphasis added).  Rule 23 cannot be used to "abridge, enlarge, or modify any substantive right."  <u>Amchem Prod., Inc. v. Windsor</u>, 521 U.S. 591, 613 (1997) (quoting 28 U.S.C. § 2072(b)); <u>accord</u> <u>Blaz v. Belfer</u>, 368 F.3d 501, 504 (5th Cir. 2004) ("A class action is merely a procedural device; it does not create new substantive rights.").

For example, in <u>Ellis v. Edward D. Jones & Co., L.P.</u>, 527 F. Supp. 2d 439 (W.D. Pa. 2007), the court examined the interplay between Rule 23 and the Fair Labor Standards Act ("FLSA").  Claims asserted under the FLSA can only be pursued on a collective basis if each member opts-in to the class.  <u>Id</u>. at 444.  That requirement protects employers from being sued in representative actions, and protects employees from having their rights litigated without their consent.  <u>Id</u>. at 456.  The issue in <u>Ellis</u> was whether the plaintiffs could pursue, in the same action, a claim under the FLSA and a claim under state law on behalf of a Rule 23(b)(3) class. <u>Id</u>. at 457.  The court held that the FLSA precluded the application of Rule 23 because it would "annihilate" the results intended by the statute — <u>i.e.</u>, it would expose employers to representative actions and allow the rights of employees to be litigated without their affirmative consent.  <u>Id</u>.; <u>see</u> <u>also</u> <u>Lusardi v. Lechner</u>, 855 F.2d 1062, 1068 n.8 (3d Cir. 1988) ("Courts have generally recognized that Rule 23 actions may not be used under FLSA § 16(b).").  A similar analysis applies here.

FIRREA's claims process can only be exhausted by individuals who comply with it. That requirement facilitates the efficient resolution of the failed bank's affairs, which conserves the assets of the Receivership estate, to the benefit of all claimants.  The forced inclusion of an

opt-out class into the claims process would completely undermine the statutory scheme crafted by Congress, creating costly logistical problems for the Receiver to the detriment of WMB's creditors who have affirmatively asserted claims.  Every dollar FDIC-Receiver would spend in this manner would be unavailable to those claimants who had come forward and proven their claims.  In FIRREA, Congress reasonably preferred known claimants who come forward with claims over unknown, potential claimants.  Plaintiffs' purported "administrative class claim" would reverse that preference.  Rule 23 — which is only a procedural rule — cannot override congressional intent in this way.

       3.    <u>Rule 23 supports FDIC-Receiver's interpretation of FIRREA.</u>

The individual exhaustion requirement of FIRREA, which is jurisdictional, is entirely compatible with Rule 23.  Once FIRREA's jurisdictional requirement is met by individual claimants, a plaintiff is free to seek certification under Rule 23 of a class of persons who have individually exhausted the administrative claims process.  As the U.S. Court of Appeals for the Third Circuit explained in the analogous context of the Federal Tort Claims Act:

> Rule 23's authority and provisions are in no way lessened or affected by our first requiring that administrative tort claims . . . meet individual jurisdictional requirements.  Once these requirements have been met by the individual claimants, the provisions of Rule 23 are operative . . . in the same manner and to the same extent as in an action against a private individual under like circumstances.

<u>Commonwealth of Pa. v. Nat'l Ass'n of Flood Insurers</u>, 520 F.2d 11, 24 (3d Cir. 1975) (citation omitted), <u>overruled on other grounds by</u> <u>Commonwealth of Pa. v. Porter</u>, 659 F.2d 306 (3d Cir. 1981).  The same is true with respect to the FIRREA claims process.

4.      FIRREA's individual exhaustion requirement is similar to the exhaustion requirements of other federal statutes.

A comparison to other administrative exhaustion schemes buttresses the conclusion that class claims may not be submitted in the FIRREA claims process.

First, the FIRREA exhaustion requirement is consistent with the exhaustion requirement of the Federal Tort Claims Act ("FTCA"), which requires that each class member exhaust an administrative claims process.[4]   For example, in Commonwealth of Pennsylvania v. National Association of Flood Insurers, the Third Circuit began its analysis by recognizing that "neither the [FTCA] nor the regulations make provision for filing 'class action' administrative claims against the United States."  520 F.2d at 23.  The Third Circuit noted that "the statute makes no distinction between the individual claimant and the claimant who may, by reason of the facts giving rise to his claim, be a member of a class.  In both instances, the purpose and the language of the statute require claimants to have separately and individually satisfied all jurisdictional requirements."  Id. (footnote omitted); accord Caidin, 564 F.2d at 286-87 (each member of an alleged FTCA class is required to exhaust administrative remedies under 28 U.S.C. § 2675(a)); Founding Church of Scientology, 459 F. Supp. at 754 (applying FTCA and noting that "[a]ll the courts that have considered this issue have concluded that every member of a class must exhaust his administrative remedies").  Like the FTCA, FIRREA does not distinguish between claimants

---

[4] The FTCA and FIRREA have similar goals.  Congress enacted the FTCA "to improve and expedite disposition of monetary claims against the Government."  Founding Church of Scientology v. FBI, 459 F. Supp. 748, 754 (D.D.C. 1978) (citation omitted).  Similarly, one of the primary purposes of FIRREA is to "ensure that the assets of a failed institution are distributed fairly and promptly among those with valid claims against the institution . . . and to expeditiously wind up the affairs of failed banks."  Freeman v. FDIC, 56 F.3d 1394, 1401 (D.C. Cir. 1995) (internal quotations and citation omitted).  In both the FTCA and FIRREA, Congress established an administrative claims process with the intent of resolving claims quickly and efficiently, and in neither instance did Congress address, in the statute or its legislative history, an exception to the exhaustion requirement for similarly-situated claimants.  If Congress had intended that the claims process in either scheme accommodate class claims, it is reasonable to assume that there would be some indication of that intent, but there is not.

who are part of a potential class and those who are not.  Given the lack of such a distinction in FIRREA, it would be improper for a court to rewrite FIRREA to allow for administrative class claims.

Similarly, the U.S. Supreme Court has found that class claims are not allowed under the mandatory administrative review process for social security claims.  See Weinberger v. Salfi, 422 U.S. 749 (1975); Califano v. Yamasaki, 442 U.S. 682 (1979).  Under section 205(g) of the Social Security Act, federal courts only have jurisdiction over the social security claims of plaintiffs who have received a "final decision of the Commissioner of Social Security made after a hearing to which [the plaintiff] was a party."  42 U.S.C. § 405(g).  Because of this limitation, the Supreme Court held in Weinberger that the district court erred in determining that it had jurisdiction over unnamed class members when there was no allegation that the unnamed class members had exhausted their administrative remedies.  422 U.S. at 764.  Four years later, in Califano, the Supreme Court clarified that a class action could be appropriate under 42 U.S.C. § 405(g), but only if "the district court has jurisdiction over the claim of each individual member of the class."  442 U.S. at 701 (emphasis added).

Likewise, under Section 605(a) of the Contract Dispute Act ("CDA"), claimants are required to present their claims to a contracting officer as a prerequisite to filing suit in the Court of Federal Claims or obtaining review by a board of contract appeals.  See Arctic Slope Native Ass'n, Ltd. v. Sebelius, 583 F.3d 785, 2009 WL 3082337, at *6 (Fed. Cir. Sept. 29, 2009) (citations omitted).  Thus, "the timely submission of a claim to a contracting officer is a necessary predicate to the exercise of jurisdiction by a court or a board of contract appeals over a contract dispute governed by the CDA."  Id.  Based on this jurisdictional requirement, the

Federal Circuit held that claimants who fail to exhaust the CDA's mandatory administrative process cannot be members of a class in an action based on the CDA.  Id. at *7-8.

And in the same vein, Section 411(a) of the Copyright Act provides that "no action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title."  17 U.S.C. § 411(a).  Courts have consistently held that this requirement is jurisdictional, and thus, courts only have subject matter jurisdiction over those claims arising from registered copyrights.  See In re Literary Works in Elec. Databases Copyright Litig., 509 F.3d 116, 121-22 (2d Cir. 2007).  In In re Literary Works, the Second Circuit therefore held that "[o]nly when each claim satisfies the jurisdictional prerequisite may the district court utilize Rule 23 to 'exercise its jurisdiction over the various individual claims in a single proceeding.'" Id. at 127 (quoting Califano, 442 U.S. at 701 (internal brackets omitted)).

In contrast to FIRREA and the other statutory exhaustion schemes discussed above, the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure expressly contemplate submission of class claims, and afford bankruptcy courts discretion to accept such claims in appropriate cases.  Specifically, Bankruptcy Rule 9014 provides that in certain situations the bankruptcy court can utilize Bankruptcy Rule 7023, which, in turn, enables the court to apply Rule 23.  See In re Am. Reserve Corp., 840 F.2d 487, 488 (7th Cir. 1988); In re Charter Co., 876 F.2d 866, 873 (11th Cir. 1989) (interpreting Congress's inclusion of Rule 23 as an intent to allow class claims in bankruptcy).[5]

---

[5] Even in the bankruptcy context, however, a pre-bankruptcy class certification will not necessarily be respected in the bankruptcy process.  See Am. Reserve, 840 F.2d at 493-94; In re Computer Learning Ctrs., Inc., 344 B.R. 79, 93 (E.D. Va. 2006) ("a pre-filing class certification is not binding on the bankruptcy court."); In re Zenith Labs., Inc., 104 B.R. 659, 664 (D.N.J.

Thus, where Congress intends that class claims be permitted, even under limited circumstances, Congress has made that intent clear.  Absent evidence of such Congressional intent, Rule 23 cannot override a statutory exhaustion requirement and thereby extend the jurisdiction of the courts.  See Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 370 (1978) ("it is axiomatic that the Federal Rules of Civil Procedure do not create or withdraw federal jurisdiction") (citing Fed. R. Civ. P. 82).

5.   Rule 23 cannot be used to interfere with FDIC-Receiver's management of the administrative claims process.

Plaintiffs may not use Rule 23 to interfere with FDIC-Receiver's statutorily-mandated power to manage the administrative claims process.  FIRREA was enacted at a time when the savings and loan industry was in crisis.  See Linde Thompson Langworthy Kohn & Van Dyke, P.C. v. RTC, 5 F.3d 1508, 1510 (D.C. Cir. 1993) (FIRREA was "an attempt to superimpose order upon the mounting chaos of thrift insolvency.").  In response to that crisis, Congress, in FIRREA, gave "the FDIC power to take all actions necessary to resolve the problems posed by a financial institution in default" (H.R. Rep. No. 101-54(I) at 330 (1989), as reprinted in 1989 U.S.C.C.A.N. 86, 126), so that the Receiver could "resolve failed institutions in an expeditious manner."  Id. at 322, as reprinted in 1989 U.S.C.C.A.N. 86, 118.

In order to facilitate the resolution of the affairs of the failed institution, Congress established an administrative claims process in which all claims against the failed institution must be submitted.  See 12 U.S.C. §§ 1821(d)(3)-(13).  That "legislatively-created framework strikes a fair balance between the goals of efficiency and expediency underlying FIRREA and the interests of creditors who, having invoked the proper procedures for protecting their rights, have expended time, money, and energy in properly asserting their claims."  Whatley v.

1989) ("[T]here may be other factors in the bankruptcy proceeding that make class certification there less compelling and it may be possible that a different result might be appropriate.").

15

Resolution Trust Corp., 32 F.3d 905, 908 (5th Cir. 1994).  For example, Congress in several places in FIRREA limited the types of remedies available against the Receiver.  See, e.g., 12 U.S.C. §§ 1821(j), 1825(b)(2), 1825(b)(3).  Those limitations were meant not only to enable the FDIC as Receiver to resolve claims against the failed institution quickly and without resort to further litigation, but also to conserve the limited assets of the Receivership estate.  See Marquis, 965 F.2d at 1152 ("Congress intended the [claims process] to provide a streamlined method for resolving most claims against failed institutions in a prompt, orderly fashion, without lengthy litigation.").

Congress took steps in FIRREA to ensure that the FDIC as Receiver would be able to carry out its statutory powers and functions, including administering the claims process, without interference.  Specifically, in 12 U.S.C. § 1821(j), Congress withdrew jurisdiction from all courts to restrain or affect the Receiver from exercising its statutory powers and functions:

> Except as provided in this section, no court may take any action, except at the request of the Board of Directors by regulation or order, to restrain or affect the exercise of powers or functions of the Corporation as a conservator or a receiver.

12 U.S.C. § 1821(j) (emphasis added).  As the Third Circuit has recognized, Section 1821(j) was "intended to permit the FDIC to perform its duties as . . . receiver promptly and effectively without judicial interference."  Hindes v. FDIC, 137 F.3d 148, 160 (3d Cir. 1998); accord Rosa, 938 F.2d at 397; Gross v. Bell Sav. Bank PaSA, 974 F.2d 403, 404, 406 (3d Cir. 1992).  In addition to the Third Circuit, ten U.S. Courts of Appeals have held that Section 1821(j) means exactly what it says — courts lack jurisdiction to take any action that would restrain or affect the

Receiver's exercise of its statutory powers and functions.[6]   As the U.S. Court of Appeals for the

Second Circuit has explained:

> FIRREA's anti-injunction provision is but part of a broader
> scheme enacted to allow the [Receiver] expeditiously to wind up
> the affairs of defunct savings and loan institutions without judicial
> interference. . . . Consistent with that purpose, the anti-injunction
> provision is a direct manifestation of Congress's intent to prevent
> courts from interfering with the [Receiver] in the exercise of its
> statutory powers.

Volges, 32 F.3d at 52; accord Radian Ins., Inc. v. Deutsche Bank Nat'l Trust Co., et al., Civ.

Action No. 08-2993, 2009 WL 3163557, at *15 (E.D. Pa. Oct. 1, 2009) ("In Section 1821(j),

"Congress has expressed its clear intent to prohibit equitable or declaratory relief that may

interfere with the FDIC's powers.").

Here, the administration of the claims process is among the most fundamental powers

granted to the FDIC as Receiver by Congress.  See 12 U.S.C. §§ 1821(d)(3)-(13).  A demand by

Plaintiffs that they be deemed to have exhausted the administrative claims process on behalf of

an unknown number of unknown individuals is tantamount to a demand that the Court override

this congressional imperative and compel the Receiver to accept an "administrative class claim."

---

[6]   See Courtney v. Halleran, 485 F.3d 942, 948 (7th Cir. 2007), cert. denied, 128 S. Ct. 1256
(2008); Hanson v. FDIC, 113 F.3d 866, 871 (8th Cir. 1997); Bursik v. One Fourth St. N., Ltd.,
84 F.3d 1395, 1397 (11th Cir. 1996); Sahni v. American Diversified Partners, 83 F.3d 1054,
1058 (9th Cir. 1996); Tri-State Hotels, Inc. v. FDIC, 79 F.3d 707, 715 (8th Cir. 1996); Barrows
v. RTC, 39 F.3d 1166 (table), No. 94-1555, 1994 WL 643309, at *3 (1st Cir. Nov. 15, 1994);
Freeman v. FDIC, 56 F.3d 1394, 1399 (D.C. Cir. 1995); Tillman v. RTC, 37 F.3d 1032, 1036
(4th Cir. 1994); Volges v. RTC, 32 F.3d 50, 52 (2d Cir. 1994); Brown v. RTC, 30 F.3d 128
(table), Nos. 93-2597, 94-1104, 1994 WL 384727, at *3 (4th Cir. July 25, 1994); Lloyd v. FDIC,
22 F.3d 335, 336 (1st Cir. 1994); Carney, 19 F.3d at 956; Heno v. FDIC, 20 F.3d 1204, 1208 n.8
(1st Cir. 1994); National Trust for Historic Pres. v. FDIC, 21 F.3d 469, 472 (D.C. Cir. 1994),
reinstating in part, 995 F.2d 238 (D.C. Cir. 1993); Sweeney v. RTC, 16 F.3d 1, 6 (1st Cir. 1994);
Ward v. RTC, 996 F.2d 99, 102 (5th Cir. 1993); Harkness Apartment Owners Corp. v. FDIC,
999 F.2d 538 (2d Cir. 1993); United Liberty Life Ins. Co. v. Ryan, 985 F.2d 1320, 1329 (6th Cir.
1993); Telematics Int'l, Inc. v. NEMLC Leasing Corp., 967 F.2d 703, 707 (1st Cir. 1992); 281-
300 Joint Venture v. Onion, 938 F.2d 35, 39 (5th Cir. 1991).

If such a demand were granted, and FDIC-Receiver were ordered to administer the claims process in a particular manner to suit a particular plaintiff, that judicial order would unquestionably "restrain or affect" FDIC-Receiver in the exercise of its powers and functions. Forcing the Receiver to accept administrative class claims is a clear violation of 12 U.S.C. § 1821(j).  Cf. Brandow, 2008 WL 5378348, at *3 (holding that an "order requiring the FDIC to produce [information concerning unnamed class members] would . . . . affect the FDIC's exercise of its powers in administering the claims process" in violation of § 1821(j)).

In sum, because the proposed class is not limited to individuals who have each exhausted the administrative claims process, the Plaintiffs' class allegations should be stricken.

IV.   CONCLUSION

For the foregoing reasons, FDIC-Receiver requests that its Motion to Strike Class Allegations from the Complaint be granted and that the Plaintiffs' class allegations be stricken from the Complaint.

March 1, 2010                                  Respectfully submitted by:

| | |
|---|---|
| Of Counsel:<br>Kathryn R. Norcross<br>Senior Counsel<br>Susan Kantor Bank<br>Counsel<br>Federal Deposit Insurance Corporation<br>Legal Division<br>3501 Fairfax Drive, VS-D-7126<br>Arlington, VA  22226<br>Tel: (703) 562-2389 | */s/ David A. Super*<br>David A. Super (*pro hac vice* application pending)<br>david.super@bakerbotts.com<br>Richard P. Sobiecki<br>rich.sobiecki@bakerbotts.com<br>Baker Botts L.L.P.<br>The Warner<br>1299 Pennsylvania Ave., NW<br>Washington, DC 20004-2400<br>Tel: (202) 639-7700<br><br>Martin C. Bryce, Jr.<br>Ballard Spahr LLP<br>1735 Market Street, 51st Floor<br>Philadelphia, PA, 19103<br>(215) 864-8238<br><br>Attorneys for FEDERAL DEPOSIT INSURANCE CORPORATION as Receiver for WASHINGTON MUTUAL BANK |