IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


ROBERT ALEXANDER and JAMES :   CIVIL ACTION
LEE REED, individually and on behalf of :   NO. 07-4426
all others similarly situated :
             :
  v.          :
             :
WASHINGTON MUTUAL, INC.;   :
WASHINGTON MUTUAL BANK;   :
WASHINGTON MUTUAL BANK FSB; and :
WM REINSURANCE MORTGAGE  :
REINSURANCE COMPANY    :


O'NEILL, J.                 June 28, 2011


## MEMORANDUM

Plaintiffs Robert Alexander and James Lee Reed allege that they obtained residential

mortgage loans from Washington Mutual Bank (WMB): Alexander in December of 2005 and

Reed in April of 2007.  Compl. ¶¶ 10-11.  Each purchased his home with a down payment of less

than twenty percent and was required to purchase private mortgage insurance.  Id.  Each plaintiff

alleges that he purchased PMI from an insurer with whom WMB had a captive reinsurance

arrangement.  Id.

On October 22, 2007, plaintiffs filed a class action complaint alleging that defendants

WMB, Washington Mutual, Inc., Washington Mutual Bank FSB and WM Mortgage Reinsurance

Company violated the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. §§ 2601 et

seq., by collecting illegal referral or kickback payments in the form of excessive reinsurance

premiums.  See 12 U.S.C. § 2607(a) ("No person shall give and no person shall accept any fee,

kickback, or thing of value pursuant to any agreement or understanding . . . that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person."). Plaintiffs contend that WMB would steer residential loan customers who needed PMI to PMI insurers selected by WMB. Id. ¶ 56. In exchange for the referral, these PMI providers allegedly paid a portion of the PMI premiums received from borrowers to WM Reinsurance, a captive reinsurer and wholly owned subsidiary of WMB. Id. ¶¶ 59. Plaintiffs assert that the captive reinsurer received payments that were not commensurate with its actual risk exposure. Id. ¶¶ 60-65, 67. They allege that the captive reinsurance arrangement was a sham transaction meant to allow WMB to collect illegal kickbacks in return for referring borrowers to certain PMI providers. Id. ¶¶ 66-67. Plaintiffs seek statutory penalties and attorney's fees under RESPA section 2607(d).[1]

Approximately one year after plaintiffs filed their complaint, WMB failed and the Federal Deposit Insurance Corporation was appointed as receiver for WMB. On February 23, 2010, I ordered the FDIC in its capacity as receiver for WMB to be substituted for WMB in this action.[2] Before me now is FDIC-Receiver's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), plaintiffs' response and FDIC-Receiver's reply. I held oral argument on the motion on June 22, 2011. FDIC-Receiver argues that under the Financial Institutions Reform,

---

[1]     Plaintiffs' complaint also seeks injunctive and declaratory relief on behalf of a putative class.

[2]     FDIC-Receiver does not holds or insure or reinsure plaintiffs' loans. FDIC-Receiver argues and plaintiffs concede in their response to the motion to dismiss that plaintiffs' claim for injunctive and declaratory relief is moot. Plaintiffs claim for equitable relief, set forth in Count II of the complaint, will be dismissed.

Recovery and Enforcement Act of 1989 (FIRREA), and in particular, 12 U.S.C. § 1825(b)(3), the

relief sought by plaintiffs may not be awarded against it as a matter of law.  For the reasons that

follow, I will grant the motion.

### STANDARD OF REVIEW[3]

Federal Rule of Civil Procedure 12(b)(6) permits a Court to dismiss all or part of an

action for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

Typically, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed

factual allegations," though plaintiff's obligation to state the grounds of entitlement to relief

"requires more than labels and conclusions, and a formulaic recitation of the elements of a cause

of action will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  "Factual

allegations must be enough to raise a right to relief above the speculative level on the assumption

that all of the allegations in the complaint are true (even if doubtful in fact)."  Id. (citations

---

[3]        FDIC-Receiver's motion to dismiss plaintiffs' complaint seeks to dismiss the
complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter
jurisdiction.  Plaintiffs responded to FDIC-Receiver's motion as if it were a motion to dismiss
under Rule 12(b)(6).  I find that plaintiffs' motion is properly considered under Rule 12(b)(6),
which asks whether the complaint states a claim for which relief may be granted, not as a
question of whether the court has subject matter jurisdiction to hear plaintiff's claim.  See
Morrison v. Nat'l Austl. Bank Ltd., —— U.S. ——, 130 S. Ct. 2869, 2877, 177 L. Ed. 2d 535
(2010) (noting that the question of the court's subject matter jurisdiction to hear a case "presents
an issue quite separate from the question whether the allegations the plaintiff makes entitle him
to relief"); Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998) (internal quotation
marks and citations omitted) ("the District Court has jurisdiction if the right of petitioners to
recover under their complaint will be sustained if the . . . laws of the United States are given one
construction and will be defeated if they are given another, . . . unless the claim clearly appears to
be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is
wholly insubstantial and frivolous"); Bell v. Hood, 327 U.S. 678, 682 (1946) ("Jurisdiction . . . is
not defeated . . . by the possibility that the averments might fail to state a cause of action on
which petitioners could actually recover.").

omitted). The complaint must state "'enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Wilkerson v. New Media Tech. Charter Sch.Inc., 522 F.3d 315, 321 (3d Cir. 2008), quoting Twombly, 550 U.S. at 556. The Court of Appeals has recently made clear that after Ashcroft v. Iqbal, --- U.S. ---, 129 S. Ct. 1937, 1955, 173 L. Ed. 2d 868 (2009), "conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss: 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.' To prevent dismissal, all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009), quoting Iqbal, 129 S. Ct. at 1949. The Court also set forth a two part-analysis for reviewing motions to dismiss in light of Twombly and Iqbal: "First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" Id. at 210-11, quoting Iqbal, 129 S. Ct. at 1950 . The Court explained, "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." Id., citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008). "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" Iqbal, 129 S. Ct. at 1949.

**DISCUSSION**

**I.     Plaintiffs' Claim for Statutory Penalties**

When FDIC-Receiver stepped into WMB's place in the aftermath of WMB's failure, the

dictates of FIRREA became applicable to plaintiffs' claims and the types of relief that plaintiffs

may pursue.  FDIC-Receiver argues that FIRREA divests this Court of jurisdiction over

plaintiffs' claims because plaintiffs may not recover the relief they sought against WMB from

FDIC-Receiver.  FDIC-Receiver asserts that penalties cannot be awarded against FDIC-Receiver

under FIRREA and that plaintiffs may not recover the relief they seek pursuant to RESPA

because the relief sought constitutes a penalty.  Plaintiffs counter that FIRREA only exempts the

FDIC from liability for penalties and fines related to taxes and the damages they seek are

compensatory, not penal.

> **A.     Section 1825(b)(3) Precludes Plaintiffs From Recovering Penalties from**
> **FDIC-Receiver.**

12 U.S.C. section 1825(b)(3) provides that the FDIC as Receiver "shall not be liable for

any amounts in the nature of penalties or fines, including those arising from the failure of any

person to pay any real property, personal property, probate, or recording tax or any recording or

filing fees when due."  "[S]tatutory interpretation begins with the language of the statute itself."

Gov't of the V.I. v. Knight, 989 F.2d 619, 633 (3d Cir. 1993), citing Penn. Dep't of Pub. Welfare

v. Davenport, 495 U.S. 552, 557-58 (1990).  "If the statutory language is clear, a court must give

it effect unless this 'will produce a result demonstrably at odds with the intention of the

drafters.'"  Id., quoting Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 571 (1982).  The plain

language of FIRREA clearly prohibits the application of all penalties against the FDIC as

receiver.  After the phrase "including those," the referenced taxes and fees present a

nonexhaustive list of examples of the types of penalties or fines for which FDIC-Receiver shall

not be liable.

The legislative history of section 1825(b)(3) lends further support to a finding that the

provision is intended to exempt FDIC-Receiver from liability for all penalties and not just those

related to taxes. When FIRREA was enacted in 1989 section 219 added subsection (b)(3) to

12 U.S.C. section 1825. Pub. L. 101-73, 103 Stat. 183 (1989). At the time, section 219 was

titled "Exemption from Taxation: Limitation on Borrowing." In the Federal Deposit Insurance

Corporation Improvement Act of 1991, Pub. L. No. 102-242, 105 Stat. 2236 (1991), Congress

amended the subject heading of FIRREA Section 219 by striking the words "From Taxation" and

leaving only the word "Exemption." Id. Noting that "under a heading formerly referring to

'Taxation' but later broadened by deletion, § 1825(b)(3) states that FDIC 'shall not be liable for

any amounts in the nature of penalties or fines . . . .'" The Court of Appeals for the Ninth Circuit

thus found that there was no basis for a district court's award of penalties against the FDIC in

Monrad v. Fed. Dep. Ins. Corp., 62 F. 3d 1169, 1175 (9th Cir. 1995).

Plaintiffs argue that the Court of Appeals' decision in Hennessy v. Federal Dep. Ins.

Corp., 58 F.3d 908 (3d Cir. 1995), supports their position that FIRREA's grant of immunity to

the FDIC for claims that are penal in nature applies only in the area of taxes. I am not convinced

by plaintiffs' argument. In a footnote, the Court of Appeals noted that the provision "appears to

concern exemptions from taxes." Id. at 924 n.11 (emphasis omitted). Without further

explanation, the Court stated that it found "unconvincing" the Receiver's argument that Section

1825(b)(3) created an exemption from the relevant ERISA penalty. Id. I concur with FDIC-

Receiver that the Court of Appeals' footnote is dictum: "a statement in a judicial opinion that

could have been deleted without seriously impairing the analytical foundations of the holding –

that, being peripheral, may not have received the full and careful consideration of the court that

uttered it." In re McDonald, 205 F.3d 606, 612 (3d Cir. 2000), quoting Sarnoff v. Am. Home

Prods. Corp., 798 F.2d 1075, 1084 (7th Cir.1986); see also Calhoun v. Yamaha Motor Corp., 216

F.3d 338, 344 n. 9 (3d Cir. 2000) ("Insofar as this determination was not necessary to either

court's ultimate holding, however, it properly is classified as dictum.  It therefore does not

possess a binding effect on us pursuant to the 'law of the case' doctrine.").  The Court's

consideration of the possible effect of section 1825(b) was not necessary to its determination that

ERISA section 1132(c)(1) applied to the FDIC as receiver and that the district court had not

abused its discretion in denying the plaintiffs a section 1132(c)(1) penalty award.  Accordingly, I

do not afford precedential effect to the footnote in Hennessy.

Other Courts applying section 1825(b)(3) have found that it "forecloses liability for 'any

amounts in nature of penalties or fines,' without qualification." Nat'l Loan Investors L.P. v.

Town of Orange, 204 F.3d 407, 410 (2d Cir. 2000).  In Cassese v. Washington Mutual, Inc., 711

F. Supp. 2d 261, 273 (E.D.N.Y. 2010), the Court found that "Section 1825(b), by its plain

language, bars punitive damages from being assessed against the FDIC after [the] receivership

has commenced."  The Court dismissed plaintiffs' argument that Section 1825(b) applies only to

tax liability, finding it "unconvincing" "[b]ased on the text of the statute."  Persuaded by the

reasoning in Cassese, the Court in Poku v. Federal Deposit Insurance Corporation, No 08-1198,

2011 WL 1599269, at *4 (D. Md. Apr. 27, 2011), found that "[a]s punitive damages represent

penalties, the plain language of Section 1825(b) precludes the imposition of punitive damages on

the FDIC as Receiver."  See also Holmes v. Fed. Dep. Ins. Corp., No. 11-211, 2011 WL

1750227, at \*4 (E.D. Wis. May 6, 2011) (ruling on motion to remand that it had no reason to believe that FDIC might not have a defense as to claims for punitive damages under section 1825(b)(3)).

Section 1825(b)(3)'s prohibition on all penalties maximizes the assets available to satisfy claims for actual damages against a failed financial institution. "[A]ny punitive damage award asserted against a failed institution would come out of the pockets of other creditors who had no part in the wrongful conduct being punished." Cassese, 711 F. Supp. 2d at 273; see also Poku, 2011 WL 1599269, at \*4 ("a large punitive damage award might substantially diminish the assets available to distribute the contributors of the bank"). Further, "[p]unitive damages by definition are not intended to compensate the injured party, but rather to punish the [party] whose wrongful action was intentional or malicious, and to deter him and others from similar extreme conduct." City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 266-67 (1981). "[T]he primary target of any punitive damages, that is, WMB, no longer exists and cannot be deterred from any future conduct. Thus, as several other courts have held, it is not reasonable to allow punitive damages when there is little or no conduct to deter." Cassese, 711 F. Supp. 2d at 273 (collecting cases); see also Poku, 2011 WL 1599269, at \*4 ("[A] punitive damage award will achieve little in the way of deterring the failed [Washington Mutual] Bank from violating its obligations to its customers."). I conclude that section 1825(b)(3) of FIRREA precludes plaintiffs from recovering relief in the form of a penalty from FDIC-Receiver.

**B.      RESPA's Treble Damages Provision Constitutes a Penalty.**

RESPA provides that "[a]ny person or persons who violate the prohibitions or limitations of this section shall be jointly and severally liable to the person or persons charged for the

settlement service involved in the violation in an amount equal to three times the amount of any charge paid for such settlement service." 12 U.S.C. § 2607(d)(2). I must determine whether the treble damages provided under section 2706(d)(2) of RESPA constitute a penalty.

Plaintiffs argue that the treble damages available under RESPA are compensatory and serve a remedial purpose. See Alston v. Countrywide Fin. Corp., 585 F.3d 753, 764 (3d Cir. 2009 ("RESPA is remedial and should be construed broadly."). They assert that treble damages are intended to compensate them for the harms they incurred in being subjected to WMB's alleged kickback scheme – "practices which could result in harm beyond an increase in the cost of settlement services." Pl.'s Br. at 6, quoting Edwards v. The First Am. Corp., 610 F.3d 514, 517 (9th Cir. 2010). Yet the harm alleged in plaintiffs' complaint appears to be limited to the effect of WMB's practices on the cost of private mortgage insurance. See Compl. at ¶ 90 (alleging that they "were overcharged for mortgage insurance" but do "not challenge private mortgage insurers' rates . . . .").

I agree that there is a compensatory element to the damages imposed under section 2706(d)(2). However, merely because damages under section 2607(d)(2) have a compensatory element does not mean they are precluded from also having a penal element. See Austin v. United States, 509 U.S. 602, 610 (1993) ("we are mindful of the fact that sanctions frequently serve more than one purpose"). Indeed, the Supreme Court has recognized that "different statutory treble-damages provisions [fall] on different points along the spectrum between purely compensatory and strictly punitive awards." PacifiCare Health Systems, Inc. v. Book, 538 U.S. 401, 405-06 (2003); citing, inter alia, Cook Cnty. v. United States ex rel Chandler, 538 U.S. 119, 130) (2003) ("[T]reble damages [under the False Claims Act] have a compensatory side, serving

remedial purposes in addition to punitive objectives."); <u>Vermont Agency of Natural Resources v. United States ex rel. Stevens</u>, 529 U.S. 765, 784 (2000) (characterizing treble-damages provision of the False Claims Act as "essentially punitive in nature"); <u>Am. Soc. of Mech. Eng'rs, Inc. v. Hydrolevel Corp.</u>, 456 U.S. 556, 575 (1989) ("the antitrust private action [which allows for treble damages] was created primarily as a remedy for the victims of antitrust violations").

"[W]hen determining whether a particular statutory provision is punitive, courts generally look in the first instance to whether the purpose of the statute <u>as a whole</u> primarily redresses individual wrongs or more general wrongs to the public." <u>Genty v. Resolution Trust Corp.</u>, 937 F.2d 899, 912 (3d Cir. 1991) (emphasis in original). The section of RESPA entitled "Congressional findings and purpose," provides:

> that significant reforms in the real estate settlement process are needed to insure that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of the country.

12 U.S.C. § 2601(a). Congress' aim in enacting RESPA was not merely to provide compensation to individual consumers but rather to protect all consumers from abusive practices in the real estate settlement process. Given RESPA's stated purpose, I find that the imposition of treble damages was intended as a "deterrent and effective penal force in the battle against" abusive settlement practices. <u>Cf.</u> <u>Genty</u>, 937 F.2d at 912 (finding "Congress' overall purpose in passing RICO, to redress serious harm to the nation as a whole, is evidence of the punitive character of the treble damages provision").

"Although in some special contexts courts have stated that statutory multiple damages may be liquidated damages to assure the plaintiff's full compensation, . . . the more generally

applicable principle is that multiple damages are imposed as a penalty for egregious conduct of the wrongdoer and a means of deterring the future repetition of such conduct." Genty, 937 F.2d at 912 (citations omitted); see also Texas Indus., Inc. v. Radcliff Materials, Inc., 451 U.S. 630, 639 (1981) ("The very idea of treble damages reveals an intent to punish past, and to deter future, unlawful conduct."). Plaintiffs seek "an amount equal to three times the amounts they have paid or will have paid for private mortgage insurance as of the date of judgment." Compl. ¶ 92." The amounts plaintiffs have paid or will have paid for private mortgage insurance necessarily incorporate any monetary injury that may have resulted from WMB's alleged kickback scheme in the form of overcharges or increased costs. Plaintiffs' own allegations support this view. See Compl. at ¶¶ 68-69 (alleging that the scheme "ke[pt] premiums for private mortgage insurance artificially inflated because a percentage of borrowers' premiums are not actually being paid to cover actual risk, but are simply funding kickbacks to lenders. . . . [P]rivate mortgage insurance premiums incorporate the payment of such kickbacks – to the detriment of consumers."). Accordingly, an unmultiplied award of the amounts plaintiffs paid for private mortgage insurance would be sufficient to compensate plaintiffs for any monetary harm suffered as a result of Washington Mutual's alleged abusive practices. Trebling that amount provides plaintiffs with a remedy beyond what is required to compensate them for any inflation of the cost of their private mortgage insurance and suggests that section 2607(d)(2) imposes a penalty. Cf. Genty, 937 F.2d at 912 ("the furnishing of a civil remedy far in excess of the amount necessary to compensate an injured RICO victim is further confirmation that these damages are punitive").

Accordingly, several Courts have concluded, albeit with little discussion, that the treble damages available under RESPA constitute a penalty. See Edwards v. The First Am. Corp., 610

F.3d 514, 517 (9th Cir. 2010) (emphasis added) ("Calculating the penalty with reference to the entire amount of the settlement service appears to address instances in which no direct referral fee has been paid."); Arthur v. Ticor Title Ins. Co. of Fla., 569 F.3d 154, 160 (4th Cir. 2009) (characterizing both the criminal penalties and trebled damages available under 12 U.S.C. § 2607(d) as "weighty penalties"); Pac. Ins. Co. v. Burnet Title, Inc., No. 02-2767, 2003 WL 22283355, at *7 (D. Minn. Sept. 24, 2003) (excluding RESPA's trebling of fees from covered "damages" in insurance coverage dispute "because that is clearly a penalty"); Dujanovic v. MortgageAmerica, Inc., 185 F.R.D. 660, 667 n.9 (N.D. Ala. 1999) (noting without further explanation that "[t]reble damages, plus court costs and reasonable attorneys fees are penalties for RESPA violations set forth in 12 U.S.C. § 2607(d)(2) and (5)"). I concur and find that the treble damages provided for under section 2706(d)(2) of RESPA constitute a penalty. Having arrived at this conclusion, I also conclude the relief that plaintiffs seek against FDIC-Receiver, now standing in the shoes of Washington Mutual, is unavailable to them under section 1825(b)(3) of FIRREA. I must dismiss plaintiffs' claim for failure to state a claim upon which relief can be granted.

## II.     Plaintiffs' Claim for Attorneys' Fees

"The general rule in the United States is that absent legislation to the contrary, litigants must bear their own attorney's fees." Com. v. Flaherty, 40 F.3d 57, 60 (3d Cir. 1994), citing Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 247 (1975). Count I of plaintiffs' complaint seeks an award of attorneys fees pursuant to 12 U.S.C. section 2607(d)(5) (emphasis added), which provides that "[i]n any private action brought pursuant to this subsection, the court may award to the prevailing party the court costs of the action together with

reasonable attorneys fees." To achieve "prevailing party" status, plaintiffs must demonstrate a "judicially sanctioned change in the legal relationship of the parties." Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 605 (2001). "Respect for ordinary language requires that a plaintiff receive at least some relief on the merits of his claim before he can be said to prevail." Hewitt v. Helms, 482 U.S. 755, 760 (1987). Plaintiffs are not prevailing parties in this action and are therefore not entitled to an award of attorneys' fees under section 2607(d)(5).[4]

An appropriate Order follows.

---

[4] Accordingly, I need not consider whether attorneys' fees under section 2607(d)(5) are compensatory or punitive or whether an award of attorneys' fees against FDIC-Receiver would violate the ratable distribution requirement of FIRREA.