IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT ALEXANDER and JAMES LEE REED, individually and on behalf of all others similarly situated | : : : : | CIVIL ACTION NO. 07-4426 |
| v. | : : | |
| WASHINGTON MUTUAL, INC.; WASHINGTON MUTUAL BANK; WASHINGTON MUTUAL BANK FSB; and WM REINSURANCE MORTGAGE REINSURANCE COMPANY | : : : : : | |

O'NEILL, J.                                                                                           December 4, 2012

**MEMORANDUM**

Now before me for decision are representative plaintiff James Lee Reed's unopposed motion for final approval of class action settlement, certification of settlement class, approval of plan of allocation, appointment of class representative, and appointment of lead class counsel and class counsel (Dkt. No. 95).[1]  Also before me is a submission concerning settlement filed by defendants WMI Holdings Corp.(formerly known as Washington Mutual, Inc. or WMI), WM Mortgage Reinsurance Company, Inc. (WMMRC), and J.P. Morgan Chase Bank, N.A. (JPMC), successor by merger to Washington Mutual Bank fsb (WMBfsb) (Dkt. No. 100).  There have been no objections to the proposed settlement and only five of the 42,584 class members have opted out of the class.  After reviewing the parties' submissions and holding a final fairness hearing on November 27, 2011 at which no one appeared to object on behalf of the class I will grant the unopposed motion.

---

[1]  I consider a related unopposed motion for an award of attorneys' fees, litigation costs and case contribution award for representative plaintiff (Dkt. No. 96) in a separate opinion.

## BACKGROUND

In his complaint filed on October 22, 2007 (Dkt. No. 1), representative plaintiff alleges that defendants entered into captive reinsurance arrangements for the purpose of receiving kickbacks, referral payments and unearned fee splits, which were collected in the form of excessive reinsurance premiums from private mortgage insurers to whom WMB and WMBfsb referred borrowers, in violation of Sections 8(a) and (b) of the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. §§ 2601 et seq.

After several years of litigation including a motion to dismiss by all defendants and an appeal therefrom, proceedings in Bankruptcy Court over the bankruptcy of WMI[2], the dismissal of defendant Federal Deposit Insurance Company (FDIC) as receiver and party-in-interest for defendant Washington Mutual Bank (WMB) and formal mediation before Judge Cahn, the parties reached a settlement, the essential terms of which are as follows.  The settlement class is to include:

> All borrowers with residential mortgage loans closed on or after December 22, 2005 through September 25, 2008 that were originated by Washington Mutual Bank or Washington Mutual Bank fsb and reinsured by Washington Mutual Mortgage Reinsurance Company, excluding borrowers with residential mortgage loans purchased on the secondary market and residential mortgage loans insured with lender-paid PMI.

Defendants have funded a settlement fund in the amount of $4,000,000 for the benefit of the settlement class.  The settlement amount will pay: (1) settlement payments to each participating class member on a pro rata basis; (2) a case contribution award to the representative plaintiff not to exceed $2,500; (3) attorneys' fees and litigation costs of plaintiffs' counsel totaling no more

---

[2]    See In re Washington Mutual, Inc., No 08-12229-MFW (Bankr. D. Del.).

than 30% of the settlement amount; (4) the fees and costs of the settlement administrator; and (5) any other administrative costs incurred in connection with the implementation of the settlement agreement.  The settlement includes a release and waiver in exchange for the class members' relief.[3]  The parties agree that the proposed settlement is a fair and reasonable compromise of their claims.

On June 4, 2012, after more than four years of litigation, representative plaintiff filed an unopposed motion for preliminary approval of the proposed class action settlement (Dkt. No. 89).  On June 25, 2012, the Court entered an Order preliminarily approving the Settlement,

---

[3]     The full language of the release is as follows:

> Upon the date when the Final Approval Order is entered, and in consideration of the promises and covenants set forth in this Agreement, Representative Plaintiff and each Participating Class Member, and each of their respective spouses, children, executors, representatives, guardians, wards, heirs, estates, bankruptcy estates, bankruptcy trustees, successors, predecessors, guardians, wards, joint tenants, tenants in common, tenants by the entirety, co-borrowers, co-obligors, co-debtors, attorneys, agents and assigns, and all those who claim through them or who assert claims (or could assert claims) on their behalf (including the government seeking actual damages or disgorgement on behalf of a class member or class members), shall be deemed to have completely released and forever discharged Defendant Parties and the Non-Party Mortgage Insurance Providers (collectively, the "Released Persons") from any claim, right, demand, charge, complaint, action, cause of action, obligation, or liability of any and every kind, including, without limitation, those known or unknown, from the beginning of the world until today, and including without limitation those that arise out of common law, state law, or federal law, including, but not limited to, claims under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. §§ 2601 et seq. that: (a) concern the reinsurance of private mortgage insurance on any Reinsured Loan; (b) were raised, or could have been raised in the Action; or (c) arise from any of the transactions or occurrences relating to the reinsurance of private mortgage insurance involving a Class Member that were the subject of the Action. This release shall specifically apply to bar any further dispute about the matters that are within the scope of this release, whether such dispute or issue may arise or be raised in a case filed after the Preliminary Approval Date.

conditionally certifying the Class for settlement purposes, approving the form and manner of class notice, and setting a date for a final approval hearing.

Lead class counsel retained the professional settlement administration firm of The Garden City Group, Inc. to perform settlement administration services. On August 9, 2012, a Notice of Class Action Settlement was mailed to 42,584[4] potential class members and posted on a dedicated settlement website (www.wmrespamisettlement.com). Lead class counsel also established a toll-free telephone number which Class Members were, and will continue to be, able to call if they have questions. Class members were informed that they could elect to opt-out of the class and not be bound by the settlement agreement. As of November 7, 2012, the Garden City Group had received only 5 opt-outs from the 42,584 members of the class. Dkt. No. 97 at ¶ 27. The Court held a fairness hearing on November 27, 2007. Counsel for the representative plaintiff and the defendants appeared at the fairness hearing and spoke on behalf of their clients. No objectors made an appearance.

## DISCUSSION

"When presented with an unopposed motion for class certification and settlement approval, a court must separate its analysis of the class certification issue from its evaluation of the settlement's fairness." In re Am. Investors Life Ins. Co. Annuity Mktg.and Sales Practices Litig., 263 F.R.D. 226, 234 (E.D. Pa. 2009), citing In re Brokerage Antitrust Litig., 579 F.3d 241, 257 (3d Cir. 2009). I will first address the issue of class certification for the settlement class and will the consider the fairness of the settlement.

---

[4] This number includes co-borrowers.

I.     **Class Certification**

"Actions certified as settlement classes must meet the same requirements under Rule 23 as litigation classes." In re Gen. Motors Corp. Pick-Up Truck Fuek Tank Prods. Liab. Litig., 55 F.3d 768, 799 (3d Cir. 1995). In determining whether a settlement class should be certified, district courts

> must apply an even more rigorous, "heightened standard" in cases "where settlement negotiations precede class certification, and approval for settlement and certification are sought simultaneously." . . . [T]his "heightened standard" is designed to ensure that class counsel has demonstrated sustained advocacy throughout the course of the proceedings and has protected the interests of all class members.

In re Pet Food Prods. Liab. Litig., 629 F.3d 333, 349-50 (3d Cir. 2010). Representative plaintiff must satisfy the four elements of Rule 23(a) and one or more of the requirements of Rule 23(b).

A.     **Numerosity, Commonality, Typicality, Adequacy of Representation**

Rule 23(a) states that:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). "These four elements are referred to in the short-hand as (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation." In re Corel Corp. Secs. Litig., 206 F.R.D. 533, 539 (E.D. Pa. 2002). "Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate" and "effectively limit[s] the class claims to those fairly encompassed by the named plaintiff's claims." Wal-Mart

Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2550 (2011), citing Gen. Tel. Co. of Southwest v. Falcon, 457 U.S. 147, 156 (1982).

### 1. Numerosity

The numerosity requirement is met when "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). A "class does not need a magic number of claimants" nor must the"[plaintiffs] allege the exact number or identity of the class members." Cohen v. Chi. Title Ins. Co., 242 F.R.D. 295, 300 (E.D. Pa. 2007). While there is no precise number of putative class members that will ensure the numerosity requirement is met, a potential class exceeding forty members is generally considered sufficient. See Stewart v. Abraham, 275 F.3d 220, 226-27 (3d Cir. 2001); Gates v. Rohm and Haas Co., 265 F.R.D. 208, 215 (E.D. Pa. 2010) (finding that the threshold is approximately 40 class members). Here, as defendants concede, representative plaintiff readily meets the numerosity requirement and estimates that the Class will include approximately 42,570 loans.

### 2. Commonality

Rule 23(a)(2) "provides that a proposed class must share a common question of law or fact." Sullivan v. DB Investments, Inc., 667 F. 3d 273, 311 (3d Cir. 2011). "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." Wal-Mart, 131 S. Ct. at 2551 (citations and internal quotation omitted). That is "[t]heir claims must depend upon a common contention . . . . That common contention, moreover must be capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Id.

The common contention here is that defendants allegedly collected a portion of

borrowers' mortgage insurance premiums for reinsurance services that representative plaintiff alleged exceeded and were not commensurate with the value of services actually rendered.  The complaint alleges common questions of law and fact including, among others, whether defendants' captive reinsurance arrangements involved sufficient transfer of risk; whether payments to Washington Mutual's captive reinsurer exceeded the value of any services actually performed; whether Washington Mutual's captive reinsurance arrangements constituted unlawful kickbacks from private mortgage insurers; and whether defendants accepted a portion, split or percentage of borrowers' private mortgage insurance premiums other than for services actually performed.  Representative plaintiff has raised sufficient common questions of law and fact to satisfy the commonality requirement.

### 3. Typicality

Typicality requires the Court to assess "whether the action can be efficiently maintained as a class and whether the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentee's interests will be fairly represented." Baby Neal v. Casey, 43 F.3d 48, 57 (3d Cir.1994).  "[F]actual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory." Hoxworth v. Blinder, Robinson & Co., 980 F.2d 912, 923 (3d Cir. 1992) (citations and internal quotations omitted).  "The heart of this requirement is that the plaintiff and each member of the represented group have an interest in prevailing on similar legal claims." Seidman v. Am. Mobile Sys., Inc., 157 F.R.D. 354, 360 (E.D. Pa. 1984).

Representative plaintiff's claims in this case – that he obtained a loan through

Washington Mutual and was required to purchase private mortgage insurance from a provider who then allegedly reinsured that loan through WMMRC pursuant to the captive reinsurance arrangements at issue in this lawsuit – are typical of those of the proposed settlement class as they derive from the same factual predicates and rely upon the same legal theory.

### 4. Adequacy of Representation

Rule 23(a)(4) requires a finding that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23 (a)(4). Rule 23(a)(4), insures "[t]hat the representatives and their attorneys will competently, responsibly and vigorously prosecute the suit." Bogosian v. Gulf Oil Corp., 561 F.2d 434, 449 (3d Cir. 1977), cert. den. 434 U.S. 1086 (1978). The Court must be satisfied that: (a) plaintiffs' attorneys are qualified, experienced, and able to conduct the litigation on behalf of the settlement class members; and (b) the interests of the named representatives are not antagonistic to those of other class members. See In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 532 (3d Cir. 2004); In re Gen. Motors, 55 F.3d at 800-01 (3d Cir. 1995).

Plaintiffs' counsel possess the skill, experience and qualifications necessary to conduct the litigation on behalf of the settlement class members. Further, the Court has not been apprised of any conflict between the interests of representative plaintiff and the other members of the settlement class.

### B. Maintainability of the Class Action

In addition to satisfying all of the criteria of Rule 23(a), a party seeking class certification must also satisfy one of the requirements of Rule 23(b). Representative plaintiff seeks to maintain this class action under Rule 23(b)(3), which permits class action lawsuits when "the

court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

### 1. Predominance

Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 594 (1997). "[T]he focus of the predominance inquiry is on whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." In re Processed Egg Products Antitrust Litig., 284 F.R.D. 249, 263 (E.D. Pa. 2012), citing Sullivan v. DB Investments, Inc., 667 F.3d 273, 297 (3d Cir. 2011).

Class members seek to remedy common legal grievances – namely, the allegedly improper reinsurance scheme perpetuated by defendants. The relevant factual circumstances of each settlement class member are the same in that defendants' conduct did not vary with regard to individual class members. Further, the necessary proof consists almost exclusively of an evaluation of defendants' actions or inactions. See, e.g., In re Prudential Ins. Co. of Am. Sales Practices Litig. Agent Actions, 148 F.3d 283, 314 (3d Cir. 1998) (affirming lower court's finding of predominance where plaintiff alleged defendant engaged in "common scheme" or uniform practice). I conclude that the common issues of the class members predominate over any individual issues.

### 2. Superiority

Superiority requires the court to "balance, in terms of fairness and efficiency, the merits

of a class action against those of alternative available methods of adjudication." Id. at 316. I must consider "(1) class members' interests in individually controlling the prosecution of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun; (3) the desirability of concentrating the litigation of the claims in a particular forum; and (4) the likely difficulties in managing a class action. Esslinger v. HSBC Bank Nevada, N.A., No. 10-3213, 2012 WL 5866074, at *5 (E.D. Pa. Nov. 20, 2012), citing Fed. R. Civ. P. 23(b)(3).

In the case of small RESPA-related claims, the United States District Court for the Eastern District of New York recently held that, in appropriate circumstances, a single class action is superior to a multitude of individual lawsuits, since "[g]iven these small individual sums, there can be little benefit derived from individual prosecution or control." Cohen v. J.P. Morgan Chase & Co., 262 F.R.D. 153, 159 (E.D.N.Y. 2009). Allowing the more than one thousand covered homeowners in the settlement class in this action to file individual lawsuits would waste judicial resources in the event of litigation, since representative plaintiff contends that each lawsuit would likely involve the same evidence regarding defendants' reinsurance programs as well as the same issue as to whether the programs violated RESPA. A class action here promotes judicial economy, avoids inconsistency, and provides a single forum to resolve numerous common claims. I find that the superiority requirement is satisfied in this case.

Because I find that representative plaintiff has satisfied the requirements of Rule 23(a) and 23(b)(3), I will certify the class for settlement purposes.

## II. Notice to the Class

"A court must determine that notice was appropriate before evaluating the merits of the settlement itself." In re Am. Investors Life Ins. Co., 263 F.R.D. at 237 (citation omitted). Notice

must be given to potential class members by the best notice practicable under the circumstances for all classes certified under Rule 23(b)(3). Fed. R. Civ. P. 23(c)(2)(B).

> The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Id. I find that the notice provided to the class members meets these requirements.

The settlement administrator mailed notice to potential class members after reviewing and updating address information for potential class members associated with 42,570 properties. Co-borrowers connected to the same address were each sent a copy of the notice. The four page long notice was written in simple English and was no more complicated than necessary for the class members to understand the settlement of this complex litigation. It informed class members of their right to opt-out of the class and not be bound by the settlement. Class members seeking additional information could review the information posted along with the notice on a settlement website including the complaint, the settlement agreement with exhibits, the motion for preliminary approval and settlement papers, the preliminary approval Order, the proposed plan of allocation and a list of frequently asked questions. Class members with questions were directed to contact lead class counsel via a dedicated email address and toll free telephone number.

## III.   Final Approval of Settlement

Having determined that the proposed class may properly be certified and that notice to the

proposed class was appropriate, I must determine whether the proposed settlement should be approved. I must evaluate the fairness of the proposed settlement under Rule 23(e) of the Federal Rules of Civil Procedure, which provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). In other words, "a class action cannot be settled without the approval of the court and a determination that the proposed settlement is 'fair, reasonable and adequate.'" In re Prudential, 148 F.3d at 316, quoting In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 785 (3d Cir. 1995). In making my "independent, scrupulous analysis of the settlement terms," I bear in mind the "overriding public interest in settling class action litigation." In re Pet Food, 629 F.3d at 351 (citations and internal quotations omitted).

The Court of Appeals for the Third Circuit has identified nine factors for the Court to consider in evaluating the fairness, adequacy, and reasonableness of a proposed class action settlement:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

Girsh v. Jepson, 521 F.2d 153, 157 (3d Cir. 1975) (internal quotation marks and ellipses omitted). When appropriate, the Court should also consider other factors, including:

> the maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of

>scientific knowledge, the extent of discovery on the merits, and other facts that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages; the existence and probable outcome of claims by other classes and subclasses; the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved-or likely to be achieved-for other claimants; whether class or subclass members are accorded the right to opt out of the settlement; whether any provisions for attorneys' fees are reasonable; and whether the procedure for processing individual claims under the settlement is fair and reasonable.

In re Prudential, 148 F.3d at 323. "[D]istrict courts must make findings as to each of the Girsh factors, and the Prudential factors where appropriate," and "cannot substitute the parties' assurances or conclusory statements for [their] independent analysis of the settlement terms." In re Pet Food, 629 F.3d at 349-51. Applying these factors, I find that the proposed settlement is fair, reasonable and adequate.

### 1. Continued litigation would be complex, expensive and lengthy.

Prior to reaching a settlement, this litigation had gone on for over four years. If the parties were to continue to litigate this case, further proceedings would be complex, expensive, and lengthy. For example, although information was exchanged informally during the mediation, formal discovery would still need to be completed. The issues that likely would need to be tried are complex, involving expert analyses of whether seven different reinsurance agreements provided for adequate transfer of risk between WMMRC and non-party mortgage insurance providers. That a settlement would eliminate delay and expenses and provide immediate benefit to the class militates in favor of approval. See, e.g. In re Janney Montgomery Scott LLC Fin. Consultant Litig., No. 06-3202, 2009 WL 2137224, at *8 (E.D. Pa. July 16, 2009) (finding the first factor weighed in favor of settlement where "settlement allows both the class and Defendant

to avoid the obstacles presented by protracted litigation" and "[c]onsiderable time, money and resources will be saved by approving the settlement").

  **2.  There is little substantive opposition to the settlement.**

"Courts have generally assumed that silence constitutes tacit consent to the agreement." Chakejian v. Equifax Info. Servs., LLC, 275 F.R.D. 201, 212 (E.D. Pa. 2011) (citations and internal quotation omitted). Only five class members have opted out from a settlement class of 42,584 transactions. See Dkt. No. 97 at ¶ 27. Moreover, nobody has filed a formal objection to the proposed settlement. The Attorney General of Texas contacted defendants in November with a now-resolved concern regarding the scope of the proposed settlement's release and its potential to circumscribe the State's civil enforcement powers. The release language has been modified to clarify the intent of the parties. To the extent the language has any substantive effect on the scope of the release, it does so in a way that narrows the scope of the release and thus has no adverse impact on the rights of class members under the proposed settlement. I find that this factor weighs in favor of approval.

  **3.  Settlement was reached after substantial pre-trial briefing and discovery.**

Approval of a settlement is favored where "[t]he parties arrived at an arms-length settlement . . . [with] a clear view of the strengths and weaknesses of their case." Bonett v. Educ. Debt Servs., No. 01-6528, 2003 WL 21658267, at *6 (E.D. Pa. May 9, 2003) (citation and internal quotation omitted). The parties engaged in an active pre-mediation exchange of information before reaching a settlement. Additionally, the parties engaged in extensive briefing in both the Bankruptcy Court and this Court on issues related to the merits. The proceedings and discovery undertaken provided counsel for both parties with an adequate appreciation of the

merits of the case before negotiating the settlement.  I find that the third Girsh factor favors approval of the settlement.

> **4.     Plaintiffs faced a real risk that the First Amended Complaint would not survive summary judgment proceedings or a trial on the merits.**

Success on the merits of plaintiffs' claims against the remaining defendants was not certain.  Plaintiffs' contend that defendants violated Section 8 of RESPA because the reinsurance agreements between WMMRC and certain nonparty private mortgage insurance providers did not constitute bona fide reinsurance.  Plaintiffs bear the burden of showing causation, an issue that would have resulted in a debate between opposing expert witnesses.  Further, I previously dismissed plaintiffs' claims against the FDIC, leaving only three active defendants: WMI (in bankruptcy court), WMBfsb and WMMRC.

Plaintiffs' claim against WMI arose from its status as the ultimate parent of other defendants.  Plaintiffs asserted that WMI was liable for the acts of WMMRC because the two companies were held out as one entity or because WMMRC was acting as an authorized agent of WMI.  Similar veil-piercing theories were rejected in the WMI bankruptcy case.  See In re Washington Mutual, Inc., 418 B.R. 107, 113-15 (Bankr. D. Del. 2009).

Had this case continued to trial, WMBfsb might have prevailed on its theory that plaintiffs lacked standing to sue because they do not allege that WMBfsb gave or received any compensation for the referral of settlement services in their transactions.  WMBfsb contends that it did not originate or have any connection with plaintiffs' loans

With respect to their claims against WMMRC, plaintiffs would have had to prove that the reinsurance agreements entered into by WMMRC failed to adequately transfer risk from the

non-party mortgage insurance providers.  Such a determination would require complex expert analysis, making plaintiffs' claims dependent on the outcome of a battle of expert witnesses.  Further, when this case was originally filed, plaintiffs alleged that defendants had never paid any reinsurance claim.  WMMRC asserts that due to changes in the mortgage market, it has since paid numerous claims to mortgage insurance providers under the reinsurance agreements at issue in this action.

Considering all of the above, I find that the fourth Girsh factor supports approval of the settlement.

### 5. Plaintiffs faced a strong likelihood that their recovery would be significantly lower than the settlement amount.

Even assuming defendants' liability, it is not certain that plaintiffs could recover as much in damages as the settlement provides them.  Plaintiffs sought three times the amount of all mortgage insurance premiums paid by class members.  RESPA's treble damages remedy applies to "the amount of any charge paid for [a] settlement service."  12 U.S.C. 2607(d)(2) (emphasis added).  Defendants would contest the plaintiffs' position that mortgage insurance constitutes a settlement service.  Defendants also contend that not all premiums paid for mortgage insurance at any time during the life of a mortgage loan are paid for a "settlement service."  Accordingly, any recovery of statutory damages could be limited to three times the amount of each class member's payment for mortgage insurance at settlement.  I find that this factor weighs in favor of settlement.

### 6. There is a strong likelihood that a class would not be certified.

It is also possible that outside of settlement, this Court would not certify a class, or would

certify only a smaller class.  Other courts have denied certification of similar RESPA claims.  See, e.g., Contos v. Wells Fargo Escrow Co., LLC, No. C08-838Z, 2010 WL 2679886 (W.D. Wash. July 1, 2010).  Defendants contend they would aggressively oppose class certification and that they have several viable defenses that cannot adequately be litigated on a class-wide basis.  This factor supports approval of the settlement.

    **7.  Defendants might not be able to withstand a significantly greater judgment.**

Defendants contend that their ability to withstand a greater judgment is questionable given current economic climate and the significant changes that each defendant has undergone since this suit was filed, including bankruptcy.  I agree and find that this factor weighs in favor of settlement.

    **8 & 9. The settlement fund is reasonable compared to the best possible recovery and in light of the risks of continued litigation.**

The settlement fund of $4 million represents approximately $94 per borrower.  Analyzed in conjunction with the risks of continued litigation, the settlement amount is a reasonable proportion of the best possible recovery.  Defendants contend that plaintiffs' recovery should not be based on the total amount of PMI paid by the class during the class period, but should be limited to no more than three times the amount paid for mortgage insurance at closing – on average approximately $300 per borrower.  Given uncertainty regarding the appropriate measure of damages and the asserted distressed financial condition of the defendants, the proposed settlement amount is reasonable.  The eighth and ninth Girsh factors support approval of the settlement.

    Because I conclude that application of the Girsh factors results in a conclusion that the

settlement is fair, reasonable and adequate under Rule 23(e), I will approve the settlement.

## IV.     Plan of Allocation

"Approval of a plan of allocation of a settlement fund in a class action is governed by the same standards of review applicable to the approval of the settlement as a whole: the distribution plan must be fair, reasonable and adequate." Mehling v. N.Y. Life Ins. Co., 248 F.R.D. 455, 463 (E.D. Pa. 2008) (citations and internal quotation omitted). "Generally, a plan that reimburses class members based on the nature and extent of their injuries is considered reasonable." Id.

Settlement benefits will be distributed on a per-loan basis. Dkt. No. 95-1 at ECF p. 15. After payment of administrative costs, attorneys' fees and expenses and representative plaintiff's case contribution award, the net settlement amount will be allocated to participating class members on a pro rata basis. Id. Following final approval, the settlement administrator will mail to participating class members a check in the amount of their pro rata distribution. In the event that any checks are not cashed within 120 days from the date of issue, and if lead class counsel and counsel for defendants determine that it would be cost effective, the total funds constituting all uncashed checks will be redistributed on a pro rata basis to participating class members who cashed their settlement checks within 120 days. Id. Any settlement checks from this redistribution that remain uncashed within sixty days from their date of issue will be applied towards administrative costs that have not already been paid from the settlement fund. Id. Should any funds remain after the redistribution and payment of administrative costs, the defendants will be entitled to such funds. Id. I conclude that the plan of allocation satisfies the standard set forth in Rule 23.

V.      **Appointment of Class Counsel**

Having granted final certification of the class, I "must appoint class counsel." Fed. R. Civ. P. 23(g)(1); see also Sheinberg v. Sorensen, 606 F.3d 130, 132 (3d Cir.2010) ("[U]nder the plain language of the rule, a district court's decision to certify a class must precede the appointment of class counsel."). In appointing class counsel, I

> must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A). Representative plaintiff moves for the appointment of Kessler Topaz Meltzer & Check, LLP as lead class counsel and the law firms of Bramson, Plutzik, Mahler & Birkhauser, LLP; Berke, Berke & Berke and Travis, Calhoun & Conlon as class counsel. In support of his request for appointment of class counsel, representative plaintiff has submitted information detailing the attorneys' qualifications. See Dkt. No. 89-5 at ECF p. 1-59; Dkt. No. 97 at ¶¶ 61-69; Dkt. No. 97-2 at ECF p. 1-38, 44-54, 60-63; Dkt. No. 99. Counsel have capably pursued this litigation on behalf of the class and negotiated the settlement on behalf of plaintiffs. Their work on the claims in this case has involved the expenditure of a substantial amount of time resources. I conclude that counsel's work on this case and their prior experience suffice to show that these firms are qualified to fairly and adequately represent the interests of the settlement class.

An appropriate Order follows.